No. 22,401.

FLORENCE GREEN, *Appellant*, V. THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, *Appellee*.

### SYLLABUS BY THE COURT.

LIFE INSURANCE—*Policy Never Took Effect—No Waiver.* The facts considered, and held that conditions precedent to the taking effect of a life insurance policy were not waived by statements and conduct of the insurer's agents.

Appeal from Cherokee district court; FRANK W. BOSS, judge. Opinion filed January 10, 1920. Affirmed.

*A. S. Wilson*, of Galena, for the appellant.

*William C. Michaels*, of Kansas City, Mo., for the appellee; *Delbert J. Haff*, *Edwin C. Meservey*, and *Charles W. German*, all of Kansas City, Mo., of counsel.

The opinion of the court was delivered by

BURCH, J.: The action was one to recover on a life insurance policy. Judgment was rendered for the defendant on the pleadings, which were purposely framed to present the facts necessary for a correct determination of the controversy. The plaintiff appeals.

L. J. Pickering, an agent of the defendant residing at Galena, took the application of Oliver S. Green, who resided at Riverton, a village some distance from Galena, for insurance, payable at the applicant's death to his wife, the plaintiff. The application provided that it should become a part of the contract of insurance, and contained the following stipulation:

"It is further agreed that the policy herein applied for shall be accepted subject to the privileges and provisions therein contained, and said policy shall not take effect until the same shall be issued and delivered by the said company, and the first premium paid thereon in full, while my health, habits and occupation are the same as described in this application."

The first premium amounted to thirty dollars, two dollars of which were paid and receipted for when the application was taken. The application was forwarded to the defendant's home office in Newark, N. J., where a policy was written con-

Green v. Insurance Co.

forming to the application. The defendant maintained a district agency at Joplin, Mo., which had supervision over agents of the district, including Pickering. A. B. Sullens was superintendent of the district agency, and in his absence an assistant, W. G. Cook, acted for him. The defendant sent the policy to the district agency for delivery and for collection of the first premium. Attached to the policy was a printed warning slip reading as follows:

"To THE COMPANY'S REPRESENTATIVE:
"HOLD THIS POLICY

"Before you deliver this policy please refer to a letter from the Ordinary Application Department and comply with any request contained therein.

"Remember that IT MUST NOT BE DELIVERED unless the applicant is in good health and the full initial premium is paid in cash.

"IT MUST NOT BE LEFT FOR INSPECTION. A specimen policy or illustration may be left in its stead.

"YOU WILL BE HELD RESPONSIBLE for a strict observance of the rules regarding the delivery of policies as stated in the Ordinary Rate Book.
"THE PRUDENTIAL INSURANCE COMPANY OF AMERICA."

The policy with the attached slip was mailed to Pickering by the district agency, and was received by him on October 8, 1918. On October 10 Pickering went to Riverton for the purpose of delivering the policy, but was unable to see Green, who was then in good health, because he was working in an establishment producing war material, from which visitors were excluded. On October 17 Pickering again went to Riverton to deliver the policy. Green was ill at his home with influenza, which he had contracted a few days before. Pickering was informed of the fact, and did not see Green or communicate with him, and did not deliver the policy or collect the premium. Pickering did see the plaintiff, however, and told her not to worry, that the policy was valid and in force. On October 24 Green's illness resulted in death. When Pickering learned of Green's death he notified the district agency. Cook, who was then in charge, believed the defendant was under no liability on the policy, but was of the opinion proof of death might be taken. Accordingly, Pickering went to the plaintiff's residence on October 27, taking with him blank proofs which were there filled out, without expense to the plaintiff. She offered to pay any expense which might accrue, and offered to pay the re-

mainder of the first premium; but Pickering told her the policy was in force and would be paid, and the premium would be deducted from the proceeds. Pickering wrote the plaintiff for the original receipt for two dollars, which she returned to him, and 'for which he gave her a duplicate. When informed of all the facts, the defendant, on December 26, advised the plaintiff's attorney that it declined to assume liability under the policy. Pickering was a soliciting agent having authority to take applications, deliver policies, and accept payment of premiums; but by contract of employment, by rule of the company governing the conduct of agents, as well as by the special limitation contained in the warning slip attached to the policy, the district agency and Pickering were forbidden to deliver the policy without compliance with the conditions stated in the application.

Right to recover on the policy is predicated on waiver. This court has always been liberal in applying the doctrine of waiver in insurance cases, to avoid strict enforcement of conditions in completed contracts, to prevent forfeitures, and in all instances in which elements of estoppel were present. It has never before been called on to employ pure waiver, that is, waiver not involving forfeiture, misleading, alteration of position, or prejudice of any kind, to make a contract of insurance with an applicant after his death.

The application constituted part of a negotiation having in view the formation of a contract of insurance. The application itself stated conditions which were prerequisite to consummation of the contract. They were, delivery of the policy, payment in full of the first premium, and unimpaired health at the time of delivery of the policy. It may be conceded that the company could waive any or all of these conditions. If, with full knowledge of all the facts, the officers of the company had paid the amount of the policy to the beneficiary, doubtless it would be held to have waived the conditions. If, however, any one of the conditions was not waived before the applicant's death, there was no contract.

It is elementary that there could be no waiver without an intention, entertained in fact or implied from circumstances, to dispense with compliance with one or more of the conditions contained in the application, and manifested in some unequivo-

cal manner. If whatever was done was consistent with a purpose to withhold delivery of the policy, collect the premium before delivery, or insist on good health at time of delivery, there was no waiver.

The warning slip attached to the policy shows conclusively that the defendant did not waive anything by forwarding the policy to the district agency, and by placing it in Pickering's hands for delivery. If waiver occurred, it was because of what he did after he received it.

The question whether or not, as between the company and the beneficiary, the law would regard Pickering as having authority to bind the company by waiver, may be passed by. As between the company and Pickering, he had no such authority in fact, and, under the circumstances, the limitations on his authority bear materially on the interpretation to be given his conduct. From his contract of employment, from the rules of the company governing the conduct of agents, and from the warning slip attached to the policy itself, Pickering knew that he must not deliver the policy unless the full initial premium were paid in cash and the applicant were in good health. A flagrant breach of the trust and confidence reposed in him is not to be lightly imputed. A clear design to depart from the plain path of duty, and to commit the company to formation of a contract in opposition to the provisions of the application, and in opposition to express and specific instructions regarding the very matter, should appear.

Pickering's first trip to Riverton after the application was taken was made for the purpose of collecting the premium and delivering the policy, and his conduct was consistent with an intention to obey his instructions. Not being able to see Green, he kept the policy and carried it away with him.

Pickering's second trip to Riverton was made for the purpose of delivering the policy. He found Green stricken with a fatal disease, and was not permitted to see him. Payment of premium was not discussed with any one, the policy was not left with Green's wife or any one else for delivery to him, and Pickering again retained possession of it and carried it away with him. This conduct was not only consistent with an intention to obey instructions, but was fairly inconsistent with any other intention. He did see Green's wife, and told her not

to worry, that the policy was valid and in force. The statement does not indicate an intention on his part to assume the responsibility of bringing to a conclusion with her, negotiations pending with Green, by dispensing with compliance on Green's part of vital conditions which he had engaged to meet. The statement merely indicates Pickering's opinion of the legal effect of what had already occurred—a matter about which he was mistaken. Granting that Pickering believed the policy was valid and in force, and that Mrs. Green need not worry, the statement, taken in connection with his conduct, is nevertheless perfectly consistent with the belief that he must still see Green, collect the premium, and deliver the policy to him, and with an intention to withhold delivery until that might be done. The result is that waiver is not established. There is no claim that, because of Pickering's misadvice, Green or Mrs. Green did or forbore to do anything relating to consummation of the contract, and Green died without life insurance.

The events occurring after Green's death were of slight importance. The unwaived condition of the application, that the policy should take effect on delivery to the applicant while in good health, could not by any possibility be complied with, and the proposition to insure expired by virtue of its own terms. The company undertook to procure its own proof of death, and did so without any expense to the plaintiff. Whatever "trouble" she was put to in the matter, and in mailing the receipt, was too trivial to estop the company from denying liability. Her offer to pay the premium was not accepted, the policy was still retained by the company, and Pickering's declaration that the policy was binding and would be paid was of no more consequence than his opinion, previously delivered, that the policy was valid and in force.

The judgment of the district court is affirmed.