No. 33,434

FERN STEPHAN, *Appellee,* v. MUTUAL BENEFIT HEALTH & ACCIDENT ASSOCIATION, *Appellant.*

(69 P. 2d 694)

Opinion filed July 10, 1937.

*P. E. Nulton* and *R. L. Letton,* both of Pittsburg, for the appellant.
*C. S. Denison,* of Pittsburg, for the appellee.

The opinion of the court was delivered by

SMITH, J.: This was an action upon an alleged oral contract of life insurance. Judgment was for the plaintiff. Defendant appeals.

The plaintiff made the necessary allegations as to organization and permission to do business of the defendant insurance company; that it maintained a district office at Pittsburg, Kan., in charge of Terrill G. Honn, and that defendant entrusted Honn and agents working out of the district office with the making and supervision of the terms of applications for health and accident insurance in defendant company, arranging for and collecting premiums, the delivery of the policies and the settling of claims; that at the time the cause of action arose one Butler was the agent of the defendant and worked out of the district office; that about the 15th day of

April, 1935, the defendant, acting through Butler, solicited Stephan, the husband of plaintiff, to make application for a health and accident policy in the defendant company, along with the other employees of the H. & H. Coal and Mining Company; that Butler at that time represented to Stephan that arrangements had been made with the other employees of the company whereby each of the employees was making application for insurance, and under the terms of the arrangements defendant would pay severally to any applying employee of the coal and mining company an indemnity for disability resulting from sickness or accidental injury to such employee. The petition further alleged that Butler verbally represented that arrangements had in fact been made whereby the coal and mining company had agreed to pay the defendant the premiums covering the accident features of the policy, and the sick-benefit features were to be checked off by the company on the wages becoming due the employees. The petition further alleged that Butler also stated to Stephan that the first installment of the premium would not become due until May, 1935, but that the insurance would become enforceable from the date of the signing of the application by the applicant; that the insurance would remain in force and effect until application should be approved or rejected by defendant. The petition further alleged that thereupon, on the 15th day of April, 1935, Stephan, relying upon these representations, verbally advised the agent that he was willing to make an application to defendant for insurance; that thereupon the agent wrote out and made an application for Stephan to sign, and Stephan, assuming that the application had been prepared according to the terms and conditions stated, signed the application; that Butler retained the application and promised to deliver it promptly to defendant; that the application was delivered to defendant at its district office on the 15th day of April and delivered to the principal office of defendant on or about the following day, April 16; that on the 23d day of April, 1935, Stephan, while working for the company at its mine, sustained injuries from which he died on April 24; that defendant delayed approving or rejecting the application for insurance until the 25th day of April, 1935, and never notified Stephan during his lifetime that his application had been approved or rejected; that on the 25th day of April, 1935, after the death of Stephan, the defendant sent to its district office at Pittsburg a policy with the requirement that before this policy should be delivered to Stephan he sign a waiver

of indemnity for any disability which would result to him for accidental injuries to his eyes, because Stephan, at the time of making his application, had an impairment to the sight of one of his eyes. The petition further alleged that this policy was still in the possession of the district office at the time the suit was filed and no delivery had ever been made of the policy to the plaintiff, hence plaintiff was unable to plead the terms of it; that at the time Stephan made his application for insurance this plaintiff was agreed upon as the beneficiary under the policy and that a demand had been made upon the defendant to pay the amount of the policy and defendant had refused to pay it because the application made by Stephan had not been approved by defendant. The petition then alleged that, less whatever premium may have become due on the policy on the first day of May, 1935, with which Stephan would have been chargeable, there was due and owing to the plaintiff the sum of $1,000, or face value of the policy. Judgment was prayed for in that amount.

For an answer the defendant admitted the allegations as to the organization of the company; that it maintained an office in the city of Pittsburg and admitted that plaintiff was named as beneficiary in the application. The answer next contained a general denial. The answer further alleged that at the time the application was made by Stephan this application contained the following questions and answers:

"17. Do you agree that this application shall not be binding upon the association until accepted by the association, nor until policy is accepted by the insured while in good health and free from injury? Yes.

"18. Do you hereby apply to the Mutual Benefit Health & Accident Association for a policy to be issued solely and entirely in reliance upon the written answers to the foregoing questions, and do you agree that the association is not bound by any statement made by or to any agent unless written herein; and do you agree to notify the association promptly of any change in your occupation, or if you take additional insurance, and do you hereby authorize any physician or other person who has attended or may attend you to disclose any information thus acquired? Yes."

The answer further alleged that at the time Stephan executed the application it was exhibited to him and these questions were explained. The answer further alleged that at the time of the execution of the application no consideration was paid to defendant or its agent. The answer further admitted that Stephan sustained injuries on the 23d of April, 1935, from which he died, and that defendant on April 25 conditionally issued a policy of insurance, together with a waiver of indemnity, to Stephan; that this policy

was only to be delivered to Stephan upon the execution by him of a waiver of indemnity for injury to his eye, and that this policy was never delivered to Stephan because he died before the issuance of the policy and before the execution by him of the waiver of indemnity. The answer further denied that either Honn or Butler were individually or collectively authorized to accept or reject applications for insurance or to collect premiums and deposits necessary to effect such insurance, and denied that either Honn or Butler were the general agents of the defendant, but were soliciting agents, and denied that either Honn or Butler were authorized to make contracts of insurance or to do any act necessary to effect binding contracts of insurance.

For reply to this answer plaintiff alleged that if Stephan during his lifetime signed an application containing the questions set out, the existence of these questions was unknown to Stephan and that the application was made out by Butler; that Butler pretended to have prepared the application in accordance with the understanding between Butler and Stephan, as pleaded in the petition, and that Stephan signed the application without having read it.

With the issues thus made up the case was submitted to a jury and the verdict was returned for plaintiff in the amount of $1,000. At the close of the evidence of plaintiff the defendant demurred to it on the ground that it was not sufficient to establish a cause of action against defendant. This demurrer was overruled. After the motion for a new trial and to strike out answers to certain questions was overruled judgment was entered according to the verdict. The jury answered special questions which sustained the allegations of the petition and reply as to the answers that were included in the application of Stephan for insurance. They also answered questions as follows:

"7. Was there any addition made orally to the written application? If so, state the oral part added. A. Yes. Insurance effective upon signing application.

"8. If you answer question No. 7 'yes,' state whether such oral addition was made before or after the written application was signed by Stephan. A. Before.

"9. Was Homer Butler, at the time Stephan signed the application of April 15, 1935, limited in authority to soliciting applications for insurance, the collection of the initial premium and giving a receipt therefor, and the delivery of policies after they were issued by the home office of the association, and with no power to issue policies or make a contract of insurance for the association? A. No."

In order to sustain the judgment for the plaintiff she had the burden of proving not only that Butler made the representation to her husband that the insurance would start immediately upon his signing the application, but she also had the burden of proving that Butler had authority to bind the company by making such a statement. The evidence upon which plaintiff depends to establish this is in the main the testimony of Mr. Honn, who was called by the plaintiff.

After the general testimony that Butler had been with that company since 1914 and that he took applications for health, accident and life insurance and turned into Honn's office all the premiums he collected and that he delivered policies into his office, Mr. Honn testified as follows:

"We have in my office made arrangements to write insurance on the men as a whole employed at a coal mine. We make the arrangements with the employer and employees and have been doing this kind of business since 1926 in this particular district. Mr. Butler participated in arrangements of this kind as often as he had an opportunity to write this kind of business. Quite often there was a checkoff system arranged. In some instances the employer prefers paying all of the premium without checking anything from the employees. In some cases they check it. That occurs quite frequently. Those premiums are paid through my office and remitted to the defendant company by my office. Any agent representing us, including Mr. Butler, made those arrangements. to insure the men collectively. I don't recall the number of times Mr. Butler has done that, but he has done it as often as possible to get the business. Individual policies were issued to the men."

Defendant contends that this evidence was not sufficient to prove that Butler was anything more than a soliciting agent.

This court has considered a similar question heretofore. In *West v. Metropolitan Life Ins. Co.*, 144 Kan. 444, 61 P. 2d 918, the plaintiff claimed that when her husband made application for insurance in the defendant company the agent told him that the insurance would be in effect from the time the application was made. Insured died before the policy could be delivered. Payment of the policy was demanded and refused and the beneficiary brought suit to collect. This court held that the agent was merely a soliciting agent under G. S. 1935, 40-238, 40-239. The decision was based largely upon the ground that under the sections of the statutes cited the appointment of an agent must be in writing. There is no evidence in this record that Butler was appointed in writing. We hold that the contention made by plaintiff in this case has been settled ad-

versely to the claim of plaintiff in *West v. Metropolitan Life Ins. Co.,* supra.

Appellee argues that the testimony of Honn as to the authority of Butler and the course of dealing of Butler and Honn established that Butler was acting within his authority, or the apparent scope of it. We have examined this evidence and are unable to reach a conclusion that the facts in this case established any such apparent authority. An agent charged with the business of soliciting insurance from concerns such as the company for which Stephan was working would of necessity be compelled to make arrangements with employers as to the collection of the premiums and other details. There is nothing in the course of dealing of either Butler or Honn with the customers of defendant or the general public from which Stephan had the right to conclude that either one of them had authority to make the terms of an insurance policy. There is no evidence that defendant knew of any custom or practice of Honn or Butler of representing that they had authority to vary the terms of applications or to enter into an oral contract of insurance. There are many services the agents of an insurance company such as defendant are called on to perform for it. The making of oral contracts of insurance or the changing of the terms of a written application for insurance is of so much importance and the making of such contracts would lend itself so readily to fraud that the authority of an agent to enter into such arrangements should clearly appear before such a practice should be approved. Such does not appear in this record. Rather the contrary does appear, even when the evidence offered by plaintiff is given the greatest weight that may be attached to it and all inferences favorable to the position of plaintiff are drawn therefrom.

In *Mutual Benefit Health & Accident Ass'n v. Edwards,* 174 Okla. 210, 50 P. 2d 144, the court said:

"Whatever transpired between the applicant, Frank Edwards, and the soliciting agent, S. R. Wells, the plaintiff could not recover from the defendant, upon the theory that Wells had made an oral contract to insure Edwards, without some proof as to the authority of the agent Wells. The defendant specifically denied that Wells had any such authority, and that denial was verified. There was no evidence that the agent Wells had any authority to pass upon risks or issue policies or contract any insurance. The application and receipt indicate the character of the authority of Wells, and there is no question but that he was merely a soliciting agent acting under a district agent. The record shows that Wells had no authority to contract insurance and that he made no insurance contract with the applicant." (p. 211.)

*Banks v. Clover Leaf Cas. Co.*, 207 Mo. App. 357, 233 S. W. 78, was an action on an alleged oral contract of insurance. There the court held that the agent did not have authority to bind the company. The court said:

"Furthermore, the alleged oral statement of J. M. Weil was not binding on the defendant for the reason that there was no evidence introduced showing that J. M. Weil was authorized to make contracts of insurance on behalf of the defendant. The evidence disclosed that the said agent's authority went no further than to take applications for insurance, collect the policy fee, forward the application to the defendant, for its acceptance or rejection, and deliver the policy when issued under defendant's direction. The alleged oral contract of insurance of the soliciting agent, which the defendant did not authorize or ratify, cannot be imputed to it." (p. 368.)

The case of *Yasbec v. Hartford Accident & Ind. Co.*, 132 Kan. 827, 297 Pac. 422, was brought on an alleged oral contract of insurance. In that case the agent had told a company operating a coal mine that a policy it was taking out on its employees would go into effect when the application was signed. One of the employees was killed while working before the policy was issued. The company telephoned the agent to decline the coal company's application. The agent attempted to comply with this order and tendered the coal company back the money it had paid on the policy. The coal company refused to accept the money. When the heirs of the deceased workman attempted to collect their compensation from the insurance company this court held that the company was liable and that an oral contract of insurance had been effected when the application was signed. The case is of interest because this court held first that a mere soliciting agent had no authority to obligate his company by a contract of insurance. This court held, however, in that case that the agent was more than a mere soliciting agent and that he had authority to bind the company. It is interesting to note the elements of authority as to the agent in that case that are not in this case. In the first place there was a written contract in that case in which the power and authority of the agent was defined. This court laid great stress on the paragraph of the agency contract which conferred upon the agent authority to deal with the public. The language in that respect was quite broad. This court also pointed out that the contract provided that the agent should keep a record of policies issued not by the company through the agent but for the company by the agent. There was no written contract of appointment of the agent in the case at bar. There was in the

Yasbec case also the added circumstance that after the miner was killed the company telegraphed the agent to decline the application of the mining company which had been received almost thirty days before. This circumstance in itself was persuasive evidence that the agent had authority to decline or accept applications. None of these elements were in this case. On the other hand, since Mr. Honn was a witness called for plaintiff it is only fair to consider what he said on cross-examination as to the authority of himself and Butler and the practice of the company. He denied that any agents working out of his office wrote insurance for anybody; that the insurance was written in Omaha; that his agents took applications and sent them to Omaha and that Omaha either accepted or rejected the application. In answer to a further question he testified as follows:

"A. The application is written by the soliciting salesman. He has permission to write the application and send it through my office, collect the premium and receipt for the premium, and send it with the application. The application, when it is sent to my office, we make a permanent record of it when it is received and a permanent record when it is sent out from my office to the home office, then when it is received in the home office they either accept or reject the risk by passing on the application in the home office, and if the policy is accepted the contract is then returned to my office for delivery and if an agent working for me wrote the business we mail the policy to the agent who wrote the business for a personal delivery from the Pittsburg office.

"Q. Now, what department, if you know, of the home office, handles the acceptance or rejection of the application? A. The underwriting department."

We have concluded that giving the plaintiff the benefit of every inference to be drawn from the evidence introduced by her, she failed to introduce any evidence that Butler had authority to bind the company by an oral contract of insurance, and therefore the demurrer of the defendant to the evidence of plaintiff should have been sustained.

The judgment of the trial court is reversed with directions to enter judgment for the defendant.

HARVEY, J. (concurring specially): I concur in the result, but prefer to state my reasons as follows: As I view the record in this case there is no substantial ground to say that an oral contract of insurance was made, or that anyone connected with the writing of this insurance intended that an oral contract of insurance should be made. While the insurance company planned to insure all of the employees of one employer, if they desired to be insured, the

insurance was to be effected by applications signed by each of the employees who desired to take such insurance, and the policy issued to the individual insured. No group insurance policy was to be issued. Everyone connected with the matter understood those things. There were to be individual applications and individual policies. That is the reason Stephan was asked to make an application. In this he agreed (paragraph 17) that the application should not be binding on the insurer until accepted by it, nor until the policy was accepted by the insured while in good health and free from injury. If Butler did tell Stephan the policy would be in force at once—which there is evidence tending to show—that did not convert the plan of writing this insurance into a parol contract for insurance.