No. 34,885

HATTIE M. NIXON, *Appellee*, v. THE MANHATTAN MUTUAL LIFE INSURANCE COMPANY, OF MANHATTAN, *Appellant*.

(109 P. 2d 150)

Opinion filed January 25, 1941.

*Alvin R. Springer, Hal E. Harlan* and *A. M. Johnston,* all of Manhattan, for the appellant.

*Ira C. Snyder,* of Manhattan, *James V. Humphrey* and *Arthur S. Humphrey,* both of Junction City, for the appellee.

The opinion of the court was delivered by

ALLEN, J.: This was an action upon an insurance policy by which plaintiff seeks to recover double indemnity growing out of the accidental death of her son. From a judgment in favor of plaintiff the defendant insurance company appeals.

The petition alleged that on the 6th day of November, 1937, defendant company executed and delivered to Cecil H. Nixon a life insurance policy payable to his mother, the plaintiff herein; that the policy carried a double indemnity clause in case of accidental death of the insured, and that on the 6th day of February, 1938, the insured died from bodily injuries effected through accidental means. The petition further alleged:

"That the first or original annual premium on said policy was paid in this wise: When soliciting, on October 29, 1937, the said Cecil H. Nixon to take said insurance, O. W. Faith, who was then and there the agent of defendant, authorized by it to solicit insurance, receive applications therefor and to collect the first or original premium on the same, orally agreed with the said Cecil H. Nixon that if he would then sign the application, a copy of which is attached to 'exhibit A,' and pay the agent $5 down and another $5 on the next day, the said Faith would at once pay to the defendant company its share of said premium and the policy would be in force when the company approved the application and executed the policy, and thereupon he, the said Cecil H. Nixon, would owe the said O. W. Faith as an individual the sum of $4.51, which could be paid during the latter part of the following month, or such time as the said Nixon should have the funds.

"And plaintiff says that pursuant to said oral agreement, the said Cecil H. Nixon on said October 29, 1937, executed said application and paid to O. W. Faith the sum of $5 with the delivery of said application and another sum of $5 on the following day; and on November 27, 1937, the said Cecil H. Nixon paid to the said Faith the further sum of $4.51 in full satisfaction of the obligation created by said oral agreement; that following the payment as aforesaid of said two sums of $5 each, the said O. W. Faith accounted to the defendant company for its share of said premium, amounting to $7.25, and defendant approved said application and issued said policy; that the remaining portion of said premium, $7.25, by the arrangement and practice obtaining between the said Faith and defendant, was the share of commission of the said Faith for his services in and about the writing of the policy."

The delivery of the policy was alleged as follows:

"Plaintiff says that said defendant delivered said policy to O. W. Faith for

delivery to the said Cecil H. Nixon; that the said O. W. Faith informed the said Cecil H. Nixon that said policy was so delivered and in force and further informed him, the said Nixon, that he, said agent, would safely keep said policy for him, the said Cecil H. Nixon, until the said Cecil H. Nixon should find it convenient to come for it; that the said Faith did keep said policy for the said Nixon, but after the death of the said Cecil H. Nixon as aforesaid, the said Faith wrongfully delivered said policy to said defendant and defendant wrongfully retains possession of the same and refuses to let plaintiff have possession of the same."

The answer of defendant denied the payment of the first premium and denied the delivery of the policy.

The trial court submitted two special questions to the jury. The questions and answers are as follows:

"1. Give the dates and amounts of any payments you find to have been made by deceased Cecil Nixon to O. W. Faith. Answer:

|  | Date | Amount |
|---|---|---|
| First payment | Oct. 29, 1937 | $5.00 |
| Second payment | Oct. 30, 1937 | $5.00 |

"2. Give the substance of the agreement you find was had between Nixon and Faith at the time of the taking of the application relating to payment. Answer fully. A. We have unanimously agreed that on the night of October 29, 1937, the agreement between Nixon and Faith was that Nixon pay $5 on account that night and the other $5 the following night, being October 30, 1937. Further, that the balance of the premium, the amount of $4.51, to be paid in person by Nixon to Faith at Nixon's convenience at some later date."

The application contained the following provisions:

"I agree that any policy issued to me by the company shall not take effect until the policy shall have been delivered to and received by me during my lifetime and while I am in good health and the first premium shall have been paid by me to said company or its duly authorized agent during my life and while I am in good health.

"I agree that no statements, promises, representations, notice or information made or given by or to me or to the person soliciting or taking this application, or by or to any other person shall be binding on said Manhattan Mutual Life Insurance Company or in any manner affect its rights unless the same be reduced to writing, made a part of this application and approved in writing by the president, vice-president or secretary of said company."

The action is founded upon a completed contract of insurance. The applicant agreed in the application that any "policy issued to me by the company shall not take effect until the policy shall have been delivered to and received by me during my life" and "the first premium shall have been paid by me to said company or its duly authorized agent during my life," etc.

Obviously the payment of the first premium and the delivery of

the policy were conditions precedent to be met and performed before the contract of insurance was complete.

The amount of the first year's premium was $14.51. The jury found that $10 had been paid.

The report of the agent on the application contained the following questions and answers:

"12. *a.* How much cash has been paid you on this application? $................ None. *b.* How much cash is remitted herewith? $................None. *c.* Was a receipt given applicant? . . .

"13. What settlement arrangements did you make with the applicant? C. O. D."

The application was dated October 29, 1937, and the agent's report states that no cash was paid on the application. In the face of this record the jury found that $5 was paid on that date. There was, however, some testimony to support the finding of the jury that $10 had been paid on the first premium.

It was neither alleged nor proved that the agent Faith was a general agent of the defendant company. In *West v. Metropolitan Life Ins. Co.*, 144 Kan. 444, 61 P. 2d 918, it was held as stated in the syllabus:

"1. Under R. S. 1933 Supp., 40-239, an insurance agent, as distinguished from a general agent, is an individual authorized in writing, by any insurance company lawfully qualified to transact the business of insurance, to negotiate or effect contracts of insurance.

"2. In the absence of proof of authority so to do, an insurance agent as above defined cannot agree to oral modifications of a written application for insurance, nor effect an oral contract of insurance, in such manner as to bind his principal.

"3. Where the written application for insurance provides that the company shall incur no liability under it until it has been received, approved and a policy issued and delivered, and the full first premium paid, the agent may not waive payment of premium and bind the company thereby."

Nixon knew the application requirements respecting the payment of the first premium and he likewise knew that Faith could not waive the plain provisions of the application, because, over his signature, he had agreed that "no statements, promises, representations, notice or information made or given by or to me or to the person soliciting or taking this application, or by or to any other person shall be binding on said Manhattan Mutual Life Insurance Company or in any manner affect its rights, unless the same be reduced to writing, made a part of this application and approved in writing by the president, vice-president or secretary of said company."

Plaintiff did not plead nor was there any proof that the soliciting agent Faith had any authority to waive the payment of the first premium and to extend credit on his own responsibility to applicants for insurance. There was no evidence in the record that the defendant company was to look to the agent and not to the insured for the payment of the premium or any part of the premium.

In *Smith v. Hartford Fire Ins. Co.*, 120 Kan. 53, 242 Pac. 455, it was contended "that Trimble was an authorized agent of the company and that the extension of a credit to him on his personal account was the equivalent of an actual payment of the premium to the company." It was held that the agent was not acting within the scope of his authority when he agreed with the insured that a credit on his personal and private debt to the insured would be treated as payment of the premium.

Nor do we find any provision in the application which would authorize the agent to remit to the company a part of the premium and to withhold the balance in the payment of his commission. In the orderly conduct of its business the company had the right to insist upon payment of the entire premium to it.

Plaintiff did not plead nor do we find any proof that there was a custom or practice under which the agent was authorized to waive the payment of the first premium, or to extend credit on his own account to applicants for insurance.

On this point our attention is called to G. S. 1935, 40-247, and the case of *Riddle v. Rankin*, 146 Kan. 316, 69 P. 2d 722. In the Rankin case the premium was paid to the agent—there was no dispute on that question. But assuredly the agent does not hold in trust a premium he has not received. Before the statute can be invoked it must be shown that the agent has received money or the substitute for money as a premium. Under the application the payment of the first premium was a condition precedent to be performed before the company was bound. This was a lawful condition to impose and we discern no purpose in the statute to abrogate the privilege of parties to enter into lawful agreements. The statute has no bearing on the question before us. The claim that the first annual premium was paid to the company cannot be sustained.

Nor do we find evidence in the record supporting the contention of plaintiff as to the delivery of the policy. It is not claimed there was a manual delivery of the policy. As there was no evidence to support the allegation in plaintiff's petition of the agreement between the agent Faith and the insured Nixon that Faith would re-

ceive and hold the policy for Nixon, the only evidence of a delivery of the policy is the letters written by the defendant company to the applicant. In October, 1937, the company wrote the applicant thanking him for his application and stated: "We hope to deliver your policy soon—just as quickly as the application can be acted upon the routine work completed."

On November 6, 1937, the company wrote the insured stating the policy "is being mailed today to Mr. Grigg for delivery to you." Grigg was the local agent for the company and Faith the soliciting agent officed with him. In *Mesloh v. Insurance Co.*, 111 Kan. 409, 207 Pac. 754, where a similar letter was under consideration it was stated:

"The plaintiff asserts that delivery of the policy to Fleer with unconditional instruction to deliver it to Mesloh, made a contract of insurance. The policy was not delivered to Fleer, in the sense that anything was effectuated between the company and the applicant. Sending the policy to Fleer merely amounted to passing it from one hand of the company to another, from a general agent at the home office, to a special agent in the field. Fleer was not agent of the applicant to receive the policy, and the policy remained in the custody and control of the company, undelivered to anybody, so far as the applicant was concerned." (p. 413.)

The application provided that any policy issued to the insured was not to take effect until the policy was delivered and the first premium was paid. Sending the policy to the local agent was consistent with an intention not to deliver the policy except upon payment of the premium. By such act it cannot be said the company parted with control and dominion over the policy with the purpose of thereby making a valid and binding contract of insurance. The insured had neither the actual possession nor the right of possession to the policy. (32 C. J. 1126.)

Where the application for insurance makes the payment of first premium and delivery of the policy conditions precedent to a binding contract of insurance, such provisions will be enforced. (*Green v. Insurance Co.*, 106 Kan. 90, 186 Pac. 970; *Cure v. Insurance Co.*, 109 Kan. 259, 198 Pac. 940; *Musgrave v. Equitable Life Assurance Society*, 124 Kan. 804, 262 Pac. 571; *West v. Metropolitan Life Ins. Co.*, supra.)

It is not claimed there was any element of estoppel or waiver in the case. We think the evidence fails to show payment of the initial premium and fails to show delivery of the policy.

The judgment is therefore reversed and the cause remanded with instructions to enter judgment for the defendant.