No. 35,468

CLAUDINE M. DWINNELL, *Appellant*, v. ACACIA MUTUAL LIFE
INSURANCE COMPANY, *Appellee*.

. (126 P. 2d 221)

Opinion filed June 6, 1942.

*Tinkham Veale* and *John G. Egan,* both of Topeka, argued the cause for
the appellant.

*Henry I. Eager,* of Kansas City, Mo., argued the cause, and *Barton E.
Griffith,* of Topeka, was on the briefs for the appellee; *E. M. Thore,* of Wash-
ington, D. C., *William C. Michaels, Charles M. Blackmar, Samuel D. Newkirk*
and *Roy P. Swanson,* all of Kansas City, Mo., of counsel.

The opinion of the court was delivered by

HOCH, J.: Plaintiff sought to recover on a life insurance policy.
She appeals from orders sustaining motions to strike out parts of
her second amended petition and to strike the remaining portion of
the petition from the files. She also seeks review of orders sustain-
ing motions to strike and demurrers to preceding petitions.

The alleged errors relating to the two preceding petitions may well be disposed of at the outset. The original petition was filed on December 5, 1939. On April 27, 1940, the trial court sustained a motion to strike out certain parts, and on September 7, 1940, sustained a demurrer to the remaining part of the petition. No appeal was taken from these orders, and on November 7, 1940, the claimant filed an amended petition. To this amended petition a motion to strike certain parts was leveled on November 29, 1940, and sustained on March 15, 1941. From this order and prior adverse orders appeal was taken on May 14, 1941. On June 18, 1941, a demurrer to the amended petition, remaining, was sustained and three days later, on June 21, 1941, plaintiff filed a second amended petition. On August 22, 1941, the defendant filed a motion to dismiss the appeal, which motion, uncontested, was granted by this court on September 16, 1941. By filing her second amended petition, after having instituted appeal from rulings on the preceding petitions, the plaintiff acquiesced in the prior rulings and could not appeal therefrom while her second amended petition was pending. (*Hamill v. Hamill*, 134 Kan. 715, 717, 8 P. 2d 311; *Harmon v. James*, 146 Kan. 205, 207, 208, 69 P. 2d 690, and authorities therein cited; *Rodenberg v. Rodenberg*, 149 Kan. 142, 143, 86 P. 2d 580; *Reynolds v. Armour & Co.*, 149 Kan. 460, 461, 87 P. 2d 530.) Accordingly, we cannot now review the rulings on the motions and demurrers directed at the original and the first amended petition.

The second amended petition—hereinafter referred to as the petition—alleged that C. M. Case, an agent of defendant, The Mutual Insurance Co., who was authorized "to solicit applications," "to collect premiums therefor," and to "deliver policies to applicants on applications allowed by the defendant company," solicited Paul F. Dwinnell (deceased husband of the plaintiff) "sometime prior to May 29, 1939," and prevailed upon him to sign an application for a ten-year term life insurance policy in the sum of $5,000. Copy of the application was attached to and made a part of the petition. It was further alleged that Dwinnell submitted to a medical examination on June 12, 1939, and that the examining physician reported to the company that he was in good health and an insurable risk; that "some time prior to June 25, 1939," the defendant company issued the policy and sent it to Case, their agent, and that Case,

"Took said policy of insurance to the office and place of business of the said Paul F. Dwinnell, in Topeka, Kan.; *that at said time and in the absence*

*of the said Paul F. Dwinnell,* the duly authorized agent of Paul F. Dwinnell, *Erwin Reser, tendered to and offered to pay* to the said C. M. Case, agent of the defendant company, *the said monthly premium* which the said C. M. Case had advised the said Paul. F. Dwinnell was due on said policy, amounting to $9.75, but the said *C. M. Case,* agent of the defendant company, *refused to accept said premium."*

It was further alleged,

"That under the specific and *implied terms* of said application for insurance above referred to, and the *well-established customs* of the life insurance business, it became *the duty* of the defendant company, through its agent, C. M. Case, *to deliver* said policy of insurance to the said Paul F. Dwinnell and put said insurance in full force and effect *on a date not later than June 26, 1939,* but the said C. M. Case, agent of the defendant company, *failed and refused to deliver* said policy of insurance to the said Paul F. Dwinnell at the time the premium then due on said policy was tendered to him, or at any other time, and *wrongfully and negligently failed to see* the said Paul F. Dwinnell or attempt to see him or *attempt to deliver said policy to him* at any time after he, the said C. M. Case, received said policy for delivery." (Italics supplied.)

It was further alleged that Dwinnell was alive and in good health until June 28, 1939—two or three days after the alleged tender of premium by Reser, in the absence of Dwinnell—and that on that date Dwinnell became sick and that he died on July 4, 1939; that Dwinnell had—

"Fully performed all of the obligations and conditions conferred upon him by the specific and implied terms of said application for insurance and the established customs of the life insurance business, and at all times from May 29, 1939, up to and including a part of June 28, 1939, the said Paul F. Dwinnell was alive and was in good health, and the said C. M. Case, agent for the defendant company, could have easily ascertained said facts had he made any effort to do so, and *could have delivered said policy to the said Paul F. Dwinnell* under the terms of said application had be made any effort to do so, and, according to the specific *and implied* terms of said application and the *established customs* of the life insurance business, the said C. M. Case *should have delivered said policy* above referred to to the said Paul F. Dwinnell not later than June 26, 1939. That *on account of the negligence and failure* of the said C. M. Case, agent of the defendant company, to comply with the specific *and implied* terms of said application and the *established customs* of the life insurance business, *there was not a physical delivery* of said policy of insurance above referred to prior to the death of the said Paul F. Dwinnell, but there was *a constructive delivery, and in law a delivery,* of said policy by the defendant company to the said Paul F. Dwinnell during the time he was alive and in good health, and there was a full intention on the part of both the said Paul F. Dwinnell and the defendant company that said policy be delivered to the said Paul F. Dwinnell at a time not later than June 26, 1939." (Italics supplied.)

Further that—

"On account of the facts and allegations herein mentioned, [defendant company] became indebted to the plaintiff, the beneficiary named in said policy, in the sum of $5,000," less the first premium.

The prayer was for—

"*Judgment* against the defendant company *on said policy of insurance* in the sum of four thousand nine hundred ninety and 25/100 dollars ($4,990.25), with interest from July 4, 1939."

Among other usual provisions, the written application signed by Dwinnell contained these agreements:

"That no agent shall have the right to make, alter, modify or discharge any contract issued on this application . . .

"That except under conditions stated in the attached binding receipt, *there shall be no contract of insurance until the policy shall have been issued* by the company *and delivered* by a duly authorized agent of the company and *the first premium paid* thereon, all during the applicant's life and continuance in good health." (Italics ours.)

It is not contended by appellant that "the attached binding receipt" referred to above affects the issue here presented.

On July 1, 1941, the defendant filed two motions. The first motion was, in the main, to strike all references in the petition to "implied" terms of the written application and all those portions in which it was alleged, in substance, that it was the "duty" of the defendant company, through its agent, to deliver the policy not later than June 26; that the agent "wrongfully and negligently" failed to deliver the policy or to attempt to see and deliver the policy to Dwinnell; that the agent "could have delivered said policy," that he "should have delivered" it, and that on account of the agent's "negligence and failure to comply with the specific and *implied* terms" of the application, there was "a constructive delivery, and in law a delivery," of the policy.

The second motion was to strike the remaining part of the petition on the ground that it constituted no substantial change from the first amended petition as to which a demurrer had previously been sustained. Both motions were sustained on September 18, 1941. The plaintiff having elected not to plead further, judgment was entered "that the plaintiff take nothing" and that the defendant have judgment for costs. Thereafter the plaintiff appealed from the orders sustaining the motions to strike. She did not appeal from the judgment.

We first note appellee's contention that an appeal from the orders striking the petition cannot be entertained because no appeal was taken from the final judgment. Without question the orders striking the petition were final orders which appellant was entitled to have reviewed (G. S. 60-3302, 60-3303; *Grain Co. v. Coöperative Ass'n*, 109 Kan. 293, 295, 198 Pac. 964). Thereafter judgment was entered that plaintiff take nothing, and for the defendant for costs. Appellee urges that since no appeal was taken from the final judgment, a reversal of the prior orders sustaining motions to strike would not nullify the judgment and that therefore appeal merely from the intermediate orders should not be entertained. Whatever may be said for appellee's argument, this court has held that review of an order or ruling, appealable under our statute, not only may not be foreclosed by any action which the court or opposing litigants may subsequently take in the action, but that the party appealing from the intermediate order does not forfeit his right of such appeal by failure to appeal from a subsequent adverse judgment. In the case of *First National Bank v. Smith*, 143 Kan. 369, 370, 55 P. 2d 420, defendant's demurrer to the petition was sustained and time given to file an amended petition. The plaintiff not having filed an amended petition within the time provided, the action was dismissed. After dismissal, but within the statutory time for appeal, the plaintiff appealed from the order sustaining the demurrer. He did not, however, appeal from the judgment of dismissal. The same argument was advanced that is here made that by failing to appeal from the final judgment of dismissal he forfeited his right to appeal from the prior order. The appeal, however, was entertained, and the court also observed that while "it might have been well for appellant to have suggested a stay or continuance until the supreme court had determined the correctness of the intermediate appealable order," the fact it did not do so likewise did not preclude its right of review.

In the opinion it was frankly admitted that cases cited by appellee from other jurisdictions appear to support a contrary rule. (See, also, as in line with the holding in the Smith case, although not involving quite the same situation: *Bringle v. Gale Township*, 127 Kan. 115, 272 Pac. 126; *Hicks v. Parker*, 143 Kan. 763, 57 P. 2d 76, and 148 Kan. 679, 680, 84 P. 2d 905; *Kotwitz v. Gridley Motor Co.*, 148 Kan. 676, 84 P. 2d 903.)

We come to the principal issue. Did the court err in striking

from the petition the portions indicated? The question calls for no extended discussion. It is well settled that an applicant who signs a written application for insurance is bound by its terms. (*Green v. Insurance Co.*, 106 Kan. 90, 186 Pac. 970; *Cure v. Insurance Co.*, 109 Kan. 259, 198 Pac. 940; *Hembree v. American Ins. Union*, 121 Kan. 271, 246 Pac. 683; *Musgrave v. Equitable Life Assurance Society*, 124 Kan. 804, 262 Pac. 571; *West v. Metropolitan Life Ins. Co.*, 144 Kan. 444, 61 P. 2d 918; *Nixon v. Manhattan Mutual Life Ins. Co.*, 153 Kan. 39, 109 P. 2d 150.) The instant application specifically provided that the terms could not be modified in any way by the agent and that the policy was to be in force only after delivery to the applicant, upon payment of the first premium, the applicant then being in good health. The petition alleges that the applicant was not at his place of business when the agent called with the policy on June 26 and that the agent refused to accept the premium and deliver the policy to Reser. It is not even alleged that Dwinnell had advised Case, the insurance agent, that it was all right to deliver the policy to Reser. Case had nothing but Reser's statement that he was authorized to receive the policy. Certainly, under the plain and definite terms of the application, Case was within his rights—if not, indeed within his positive duty—when he refused to deliver the policy to Reser in the absence of Dwinnell. He was entitled to see Dwinnell and the company was entitled to have him see Dwinnell before delivering the policy. In the absence of delivery, the company cannot be held liable on the policy. (*Nixon v. Manhattan Mutual Life Ins. Co.*, supra, and cases cited therein, p. 44.)

We have examined the cases cited by appellant in support of so-called "constructive delivery," but do not find them persuasive in this case. We note two of them, to indicate typical distinctions.

In *Waldner v. Metropolitan Life Ins. Co.*, 149 Kan. 287, 292, 293, 87 P. 2d 515, the defendant company defended on the ground that satisfactory proof of insurability had not been furnished. But on the facts in the case it was held that the company had waived further proof of insurability in connection with an application for reinstatement. The jury found that the company had accepted and cashed a check for the premium and had retained it for five months. In the instant case, the agent refused to accept the premium from Reser.

Again, in *Forney v. Insurance Co.*, 87 Kan. 397, 124 Pac. 406, there

was an application for reinstatement and the issue of liability turned on the question of whether the company had received the required premium. While the decision holding the company liable rested partly on waiver, it also appeared that full payment of the premium had been made to the company's agent three days before the death occurred. No comparable situation here exists.

No facts are here alleged upon which to predicate waiver of delivery and appellant does not contend for waiver. She sues on a policy which she contends was "constructively" delivered. But while seeking to recover on the theory that there was a completed contract of insurance, her allegations are that the agent *"should have delivered"* the policy and that he *"wrongfully* and *negligently"* refused and failed to deliver it. Whether she had a cause of action for damages for loss sustained by reason of such alleged tortious actions on the part of the agent is a question not before us. Such allegations were properly stricken from a petition seeking recovery solely on the policy.

One remaining question requires only brief comment. Upon careful comparison of the first amended petition as to which a demurrer had been sustained and the second amended petition, remaining, it is clear that they are not substantially different and that the court was correct in sustaining the motion to strike the latter from the files. The same issue had been presented and determined when the previous demurrer was sustained and from that ruling no appeal had been taken. Furthermore, it is equally clear that the remaining petition stated no cause of action.

We find no error, and the judgment is affirmed.