No. 37,022

GLADYS C. SMITHER, *Appellant*, v. UNITED BENEFIT LIFE INSURANCE COMPANY, *Appellee*.

(190 P. 2d 188)

Opinion filed March 6, 1948.

*W. S. Norris*, of Salina, argued the cause, and *G. A. Spencer*, of Salina, was with him on the briefs for the appellant.

*E. S. Hampton*, of Salina, argued the cause, and *LaRue Royce, B. I. Litowich* and *H. H. Dunham, Jr.*, all of Salina, were with him on the briefs for the appellee.

The opinion of the court was delivered by

SMITH, J.: This petition stated two causes of action, one to declare an application for an accident insurance policy actually to be a policy and the other to hold the insurance company for damages for delay in issuing a policy. Judgment was for the defendant on both causes of action. Plaintiff appeals.

The first cause of action after alleging the incorporation of defendant alleged that one Omer was its general agent and on or about January 13, 1945, Omer solicited Smither to buy accident insurance from defendant, which he agreed to do, and that Smither advised Omer that he desired such insurance to become effective at once because part of his duties required him to engage in considerable automobile travel; that Omer told Smither he would insure him

against death by accident for a period from the date of the written application until February 1, 1946, on the payment by Smither to Omer of a premium of $56; that thereupon Omer prepared a written application, which Smither signed on the 13th day of January, 1945, and at the same time Smither delivered to Omer his check payable to defendant in the amount of $56, which check was received and cashed; that by the payment of the premium for such insurance Smither who was then in good health, accepted the insurance from defendant so offered by Omer and Omer for the defendant signed the application which contained a statement to the effect that the premium covered insurance on Smither to February 1, 1946, and thereby the insurance became effective and in full force; that Smither on the 19th day of January, 1945, was by accidental means injured so that he died on January 24, 1945; that the defendant was by letter written by plaintiff, the widow of Smither, on the 20th of January notified of the accident to him and that thereafter after the death of Smither defendant was notified of his death, but that defendant made no response to this letter until January 30, 1945, at which time defendant denied that any insurance policy had been issued by the defendant to Smither, but continued to hold the $56 until April 16, 1945, at which time defendant offered to return this premium to Smither's estate, which offer was refused. The petition alleged that defendant had refused to pay the $5,000 on account of Smither's death.

The second cause of action referred to all of the allegations of the first one and alleged further that Omer represented to Smither that he would promptly forward his written application to defendant's home office and that defendant would issue a policy payable to his widow insuring against death by accident for the period to February 1, 1946; that Omer sent the policy on the 13th day of January to the home office of defendant and plaintiff alleged that she did not know whether the defendant issued a policy on the life of Smither but was informed and believes that the policy was issued and forwarded to Omer or if the policy was not issued defendant negligently, carelessly and wrongfully failed to act upon the application within a reasonable time after it was sent to defendant by Omer, and failed to notify Smither of any rejection of the application, if it was rejected, until the 30th of January, 1945, thereby inducing Smither during his lifetime to believe that his application had been accepted and he was insured.

The petition further alleged that it was the usual custom of de-

fendant, within a period of three or four days from the date of the written application, to issue a policy or reject an application upon the lives of applicants and that defendant but for its carelessness would have issued such a policy of accident insurance to Smither not later than the 16th or 17th of January, 1945, and would have mailed it to Omer for delivery to Smither on or before January 19, 1945, when Smither was injured, or would have rejected the application; that Smither having been thus led to believe that the policy would be issued left Salina in an automobile for Colorado Springs on or about the 17th of, January, 1945; that on the 19th of January, 1945, he was accidentally injured so that his death resulted on January 24, 1945, and as a result of all these facts the defendant was indebted to plaintiff in the sum of $5,000.

The prayer of the petition was for the payment of $5,000 by reason of the insurance issued upon Smither's life and for a reasonable attorney's fee or in the event it be determined there was no policy of insurance written that the plaintiff have judgment for $5,000 by reason of the negligent action of defendant in failing to notify him within a reasonable time of the rejection. Attached to the petition as Exhibit "A" was an application for insurance. This application is the stereotyped application for accident insurance. It will not be set out here in its entirety. However, questions 12, 13, 14 and 15 are of interest and will be set out. They are as follows:

"12. Have you ever had any of the following diseases: Epilepsy, diabetes, any disease of the brain or nervous system, heart disease, syphilis, cancer, arthritis, or high blood pressure? Give details Several years ago suffered Heart Attack. Teeth & Tonsils removed Complete recovery.

"13. What is the form of policy applied for? A. U. 200 What is the premium? $56.00 How much of the premium have you paid? $56.00

"14. Do you understand and agree that no insurance will be effected until the policy is accepted by you while in good health and free from injury? Yes

"15. Do you hereby apply to the UNITED BENEFIT LIFE INSURANCE COMPANY for a policy to be issued solely and entirely in reliance upon the written answers to the foregoing questions, and do you agree that the Company is not bound by any statement made by or to any agent unless written herein; and do you. agree to notify the company promptly of any change in your occupation, or if you take additional insurance,. and do you hereby authorize any physician or other person who has attended or may attend you to disclose any information thus acquired? Yes

"Dated at Salina, Ks. this 13 day of Jan. 1945

"SIGNATURE OF APPLICANT

"W. E. Smither

"Premium paid on this application covers insurance to Feb. 1, 1946"

Besides the answers of questions, attention is called to the last statement of the quoted language.

The defendant answered admitting its incorporation, that Omer was its manager in Northwestern Kansas; that he agreed to procure applications for insurable risks; that the company reserved the right in its application to reject any applications. The answer denied that Omer had at any time authority to reject risks, agree on and settle terms of insurance, issue policies of insurance, make oral contracts of insurance or waive or vary any of the terms of a policy. It denied further that Omer had the authority to do the things plaintiff alleged in her petition he had done and alleged that his authority was limited to the solicitation of applications for acceptance or rejection and that all policies written by the company were executed by the chief officers of the defendant. The answer further stated that Smither made the application and gave the check, as pleaded, but at such time he knew no insurance would be effective until the application was accepted and the policy delivered to him while he was in good health and free from injury. The answer then set out the answers in the application that have already been set out here; that the application was mailed to defendant on or about January 13, 1945, and received by defendant January 15; that in answer to question No. 12 applicant stated that he "several years ago suffered a heart attack"; that on January 22 the application was denied because of myocardial degeneration; that notice of the rejection was received by Omer January 24, 1945, and no policy was ever written upon the application. The answer denied that the defendant was negligent; alleged that the application was handled in the due course of business as rapidly as possible; that about January 22, 1945, defendant was advised by plaintiff of the injury to Smither, but alleged defendant was unable to state whether Smither died from an accident or heart failure. The answer further alleged that on January 30, 1945, Omer advised plaintiff that the application had been rejected and advised her that he desired to return the check for $56 and subsequently the attorney for plaintiff advised him to hold the matter in abeyance until letters of administration had been issued and on April 16, 1945, a tender was made to the administrator and refused. The answer then alleged a general denial. The prayer was for costs. The agency contract between Omer and defendants was attached to the answer. Reference to it will be made later.

By way of reply plaintiff denied first all new matter. The reply

then specifically denied that Omer had no authority to waive or extend any obligation or to assume liability on behalf of defendant and alleged that he did have authority to bind defendant by statements made by him upon the written application. The reply further denied that Omer never had authority to accept risks for defendant and denied that Omer was not authorized to do the things alleged in the petition and alleged that under the written application prepared and submitted by defendant to Omer he was authorized to make contracts on behalf of the defendant, as alleged in the petition. The reply admitted the execution of the application, the delivery of it to Omer, the payment of the premium, but denied that Smither knew the insurance would not be effective until the application was submitted to defendant and accepted by it. The reply then admitted the application was mailed to defendant on or about January 13, 1945, but neither denied nor admitted that defendant routed it to the various departments, but alleged that Omer orally represented to Smither on or about January 13, 1945, that the policy would become effective as of that date and on the application made the notation "premium paid on this application covers insurance to February 1, 1946." The reply further alleged that Omer did not notify Smither of the rejection of the policy before his death. The reply stated plaintiff neither admitted nor denied that no policy was ever written but denied that defendant was not negligent in the manner in which it handled the application and alleged that she was informed and believed and hence alleged the fact to be that the policy was written and alleged that it was not handled in due course of business. The reply admitted the allegations of the answer as to the notice of the death.

With the issues thus made up the case was tried.

At the close of plaintiff's evidence defendant demurred to it on the ground that plaintiff had not proven sufficient facts to establish a cause of action. This demurrer was sustained as to the first cause of action. The trial court announced that the question of whether a reasonable time had elapsed should be submitted to the jury. The trial proceeded. The jury returned a general verdict for the defendant and answered special questions as follows:

"SPECIAL QUESTIONS AND ANSWERS

"The court submits to you the following special questions which it will be your duty to answer honestly and fairly and without regard to what effect, if any, your answers may have on your general verdict. Your foreman will sign the special questions and answers the same as your general verdict.

"Q. 2: In the ordinary course of business could the defendant company have sent notice so that it would have been received by Roy Omer, its agent, of the rejection of the application of Warren E. Smither for accident insurance prior to January 19, 1945? A. No."

The plaintiff filed a motion for a new trial setting out fourteen grounds. This was denied June 16, 1945. Judgment was entered in favor of defendant. The plaintiff appealed from this and from all intermediate rulings, and assigns seven specifications of error. Some of them may be considered together.

The first specification argued by plaintiff is that the trial court erred in sustaining defendant's demurrer to plaintiff's evidence as to her first cause of action.

To establish her first cause of action plaintiff proved that Smither knew the terms of the agency contract between Omer and the company; that on January 13, 1945, Omer presumed to act as manager of the company and said to Smither "Well, Warren, I couldn't sell you the same kind of a policy I sold Mac but I could sell you a straight accident policy"; and acting on that statement Smither gave to Omer and Omer accepted a check for $56 and Omer said "Your policy is in effect now, bought and paid for." The application signed by Smither that day was also signed by Omer. Just above Omer's signature was the statement "Premium paid on this application covers insurance to February 1, 1946"; at the trial Mrs. Smither testified that Smither was in good health on January 13, 1945. Plaintiff argues that the conversation between Omer and Smither was competent evidence of the construction put on the above clause by Omer, the company's manager, and of the understanding both men had at the time; that the premium paid by Smither put the insurance into immediate effect and covered it to February 1, 1946, not from some indefinite date in the future but from that very moment. The argument really is that the conversation, together with the application, constituted a policy within the means of the contract between Omer and the company.

This argument required that plaintiff establish that Omer was in fact a general agent of the company with power to bind it to general contracts. To establish this fact, plaintiff points out certain provisions of the contract of agency between Omer and the company, which was introduced in evidence. Under such circumstances we examine the entire contract rather than certain isolated parts.

The contract first stated that the company appointed Omer its

manager in the territory; the manager then agreed to procure personally and through agents applications for accident and health insurance and to collect and receipt for premiums; the company agreed to consider applications for accident and health insurance submitted by the manager or his employees, but it reserved the right in its discretion to reject or postpone any application; the manager was given the right to supervise the agents; the contract then set out a schedule of commissions it agreed to pay and the counties in which Omer was manager; and provided that all premiums collected by the manager were trust funds and the manager agreed to account for them and the manager agreed to furnish bond.

The contract then provided:

"The Manager shall collect full first premiums in cash, and has no authority to extend time of payment of premiums or to waive or extend any obligation or condition or incur any liability on behalf of the Company, or to deliver any policy unless the insured is in good health and in insurable condition."

The next clause provided the right of either party to cancel it on ten days' notice to either party. In the next paragraph the manager agreed to pay to the company all premiums original, renewal or otherwise, local agents or otherwise, then followed some details as to collections. This paragraph then contained the following provisions:

"The Manager agrees that applications procured for his agency through brokers or local agents shall in each case show the name of such broker or local agent."

After a paragraph canceling all former contracts the contract contained the following:

"No provision in this contract shall be construed to create the relation of employer and employee between the Company and the Manager, and he shall be free to exercise his own judgment as to the persons from whom he will solicit and the time, place, manner and amount of solicitations."

Plaintiff points out the provisions of the above contract, where it is provided that Omer should be manager, and also the provision which speaks of premiums on policies issued by or through Omer. She argues that when the contract spoke of a policy being issued by the manager it was referring to a purely accident policy, such as this, and meant, no doubt, that such a policy could be issued by Omer without submitting any application to the company. To sustain this position, plaintiff cites authorities holding that by the use of the word "manager" in a contract the parties intended to

speak of one who was authorized to manage the affairs of the company importing agency, control and authority.

Whatever might be our construction of the word "manager" used by itself we must construe it here together with all the other provisions of the contract. When we do so we find no ambiguity in the contract. It referred throughout to applications for insurance and to procuring applications. It provided for the company rejecting or postponing any application and expressly provided that the manager had no authority to incur any liability nor to deliver any policy unless the insured was in good health and insurable condition. The words "unless the insured is in good health and in insurable condition" clearly refers to the words "deliver any policy" while the words "incur any liability on behalf of the company" refers to the general liability of the company. This entire paragraph makes it clear that the only insurance liability the company was to incur was to be dealt with in its policies.

We have dealt with various phases of this problem heretofore. When an applicant signs a written application for insurance he is bound by its terms. (See *Dwinnell v. Acacia Mutual Life Ins. Co.,* 155 Kan. 464, 126 P. 2d 221; *Nixon v. Manhattan Mutual Life Ins. Co.,* 153 Kan. 39, 109 P. 2d 150; *West v. Metropolitan Life Ins. Co.,* 144 Kan. 444, 61 P. 2d 918; *Musgrave v. Equitable Life Assurance Society,* 124 Kan. 804, 262 Pac. 571; *Hembree v. American Ins. Union,* 121 Kan. 271, 246 Pac. 683; *Cure v. Insurance Co.,* 109 Kan. 259, 198 Pac. 940; and *Green v. Insurance Co.,* 106 Kan. 90, 186 Pac. 970.)

In this case the application had a question as follows:

"Do you understand and agree that no insurance will be effected until the policy is accepted by you while in good health and free from injury?"

The plaintiff asks us to overlook the use of the word "policy" here and to hold that the application and the conversation constituted a policy. This would ignore the entire course of dealing of the parties and be in conflict with the clear meaning of the words used. Furthermore, in his answer to the 15th question, Smither agreed not to be bound by any statement made by any agent unless it was written in the application.

We have held many times that where it is written in the application that the company shall not be bound by any statement made by an agent, the insurance agent cannot make any oral modifications of the written contract or modify the terms and conditions under

which the policy shall be used or become effective. (See *West v. Metropolitan Life Ins. Co.*, supra; *Stephan v. Mutual Benefit H. & A. Ass'n,* 146 Kan. 307, 69 P. 2d 694; *Nixon v. Manhattan Mutual Life Ins. Co.*, supra; *Dwinnell v. Acacia Mutual Life Ins. Co.*, supra; *Hudson v. Travelers Ins. Co.*, 149 Kan. 528, 88 P. 2d 1096; and *Bozich v. Metropolitan Life Ins. Co.*, 155 Kan. 573, 127 P. 2d 499.)

We hold that the trial court was correct in sustaining the defendant's demurrer to the evidence of plaintiff as to the first cause of action.

We pass now to the second cause of action. The theory upon which this was brought was that defendant was negligent in taking too long to pass on Smither's application and had it rejected this application and notified him in the regular way he could have obtained other insurance.

The jury found generally for the defendant on this cause of action and answered special questions; that the company rejected the application about 4:35 p. m. on January 16, 1945, and it could not in the ordinary course of business have sent notice of the rejection of the application prior to January 19, 1945. Various post-trial motions were filed by the plaintiff and overruled by the trial court.

Plaintiff argues first that the trial court erred because it admitted the application of Smither in evidence only on the second cause of action and not on the first. That question is largely academic now since we have considered the ruling of the trial court on the demurrer to the evidence as though the application was part of the record on the first cause of action. As a matter of fact the record is not clear that there was such a limitation on the admission of this application. As our ruling is finally made though on the demurrer to the evidence it does not make any difference. With the application before the jury still there was a failure of proof.

Plaintiff next argues that the trial court erred in permitting the defendant to cross-examine Mrs. Smither as to the condition of her husband's health in 1941 and 1942. The question came up in this way. The application said the insurance should not be effective until the policy was accepted by Smither while in good health. Mrs. Smither took the stand and testified that on January 13, 1945, when this application was signed Smither was in good health. A part of the same application was a statement that several years ago Smither had suffered a heart attack. When Mrs. Smither testi-

fied that in January, 1945, he was in good health, the defendant certainly had a right to question her about a heart attack suffered in 1941. Was the heart attack a severe one? It might mean almost anything. It was competent for defendant to inquire from her as to the extent and severity of his heart attack several years before. The whole inquiry had direct bearing on his condition in 1945.

Plaintiff next argues that the trial court erred in permitting the witness Long, the underwriter for defendant, to testify as to Smither's condition in 1941. Long had testified as a witness for plaintiff as to when the application was rejected by the company. He was put on the stand by defendant and amongst other things permitted to testify over the objection of plaintiff that a policy had been issued to Smither by a companion company of defendant, for which he was underwriter, and it had been canceled by the company and the records of that company showed it had been canceled on account of a history of heart trouble. He was also permitted to testify that no company would insure an applicant who had such a history. This was all admissible on the second cause of action. In order for the plaintiff to recover on that cause of action he had not only to prove that defendant was negligent in delaying the report to him but he was under the burden of proving that if it had notified him sooner he could have obtained other insurance. The evidence at which the objection was leveled was competent on this point.

The judgment of the trial court is affirmed.