No. 27,755.

OLLIE MUSGRAVE, *Appellant*, v. THE EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, *Appellee*.

(262 Pac. 571.)

SYLLABUS BY THE COURT.

1. LIFE INSURANCE—*Good Health at Time of Delivery of Policy and Payment of First Premium—Waiver*. Where an application for a life insurance policy provides that it shall not take effect until the first premium has been paid during the good health of the insured and that no agent shall have any right to waive any requirements, and the agent attempts against definite instructions to put it into effect by delivering it to the wife of the applicant, knowing that the applicant *is* sick and in the hospital at the time, the insurance company will not be deemed to have waived its right to the defense of lack of good health at the time of such delivery.

2. SAME — *Waiver — What Constitutes*. To constitute a waiver of a prerequisite requirement to the taking effect of a life insurance policy there must be a clear, unequivocal and decisive act of the company showing an intention to relinquish such right.

3. TRIAL — *Verdict — Judgment on Special Findings Notwithstanding General Verdict*. Judgment may be rendered by the trial court on the answers to special questions notwithstanding the general verdict when the answers are inconsistent with the general verdict.

4. NEW TRIAL—*Refusal Where Admissions Preclude Recovery*. Where the admissions and undisputed facts in the case will preclude the plaintiff from recovering there is no good purpose in granting a new trial.

Appeal from Trego district court; JACOB C. RUPPENTHAL, judge. Opinion filed January 7, 1928. Affirmed.

*Herman Long*, of Wakeeney, for the appellant.

*A. J. Wiles*, of Hays, *Robert Stone, George T. McDermott, Robert L. Webb, Beryl R. Johnson*, all of Topeka, and *Peter C. Mann*, of New York, N. Y., for the appellee.

---

Insurance, 32 C. J. p. 1315 n. 55; 17 L. R. A. n. s. 1149; 43 L. R. A. n. s. 727; L. R. A. 1916F 171; 14 R. C. L. 900, 1182. Judgments, 33 C. J. p. 1173 n. 57. Life Insurance, 37 C. J. pp. 403 n. 6, 526 n. 23. New Trial, 29 Cyc. p. 1013 n. 57. Trial, 38 Cyc. p. 1927 n. 83. Waiver, 40 Cyc. p. 259 n. 97.

The opinion of the court was delivered by

HUTCHISON, J.:   This is an appeal by the plaintiff from the judgment in favor of the defendant life insurance company in an action on a policy issued on the life of the husband of the plaintiff, she being the beneficiary named in the policy.   The defense was on the ground that the insured was not in good health at the time the policy was delivered, that the first annual premium thereon was not paid when he was in good health, and that it was delivered contrary to the rules and instructions given the agent.   Trial was had to a jury and a general verdict was rendered for the plaintiff, and answers were given by the jury to twenty-three special questions submitted. The court, on motion, struck out the answers to seven of them and modified the answer to another by striking out a qualifying clause for the support of which there was said to have been no evidence. The court further, on motion of the defendant, set aside the general verdict and rendered judgment on the remaining special answers for the defendant for its costs.

Many questions are raised and argued as to the instructions given and refused, but most, if not all, of them become immaterial because of the final action of the court in rendering judgment on the answers to the special questions of the defendant, especially when those answers are all, or substantially all, supported by undisputed facts.   As we see it there remain only three questions for serious consideration:   First, concerning the payment of the first premium; second, concerning the health of the insured at the time of payment and delivery of policy; and, third, the right of the court to render judgment for defendant as it did, instead of granting a new trial.

On the first question we can safely eliminate all reference to rules about filling blanks, advancing money to pay premium, extending time to pay it, and prescribed rules and regulations governing agents in such matters.   The jury found in answer to question 7 that payment of $66.30 was made October 3, 1925, by plaintiff, Ollie Musgrave, to C. H. Benson.   There was only one other possible date that could be said to concern the payment and that was October 28, when Benson, the agent, sent his own check to the company for the premium.   There is, of course, some question as to what constitutes payment to the company of the premium and whether a note given

by the wife, as was the fact here, was sufficient, but such matters become secondary in this case when considered in connection with the health of the insured at the time the policy was delivered. In the first place, on this point we mention the language of the application signed by the insured as follows:

"I hereby agree that the policy issued hereon shall not take effect until the first premium has been paid during my good health."

The opening statement of counsel for plaintiff is important in the way of showing some undisputed facts. It is in part as follows:

"The testimony on the part of either the defendant or the plaintiff will show that about the twenty-eighth of September, nine days after the policy came into the hands of Mr. Benson, that George Musgrave was taken sick and his sickness was such as made it advisable that he be taken to the hospital at Hays, Kan., and I believe the testimony on the part of one of the other parties will show that he went into the hospital at Hays, Kan., on the twenty-eighth day of September, 1925. He remained there at the hospital until the twenty-seventh day of October, 1925. The testimony will show that upon Mr. Benson's next trip out to Mr. Musgrave's for the purpose of delivering this insurance policy, he was informed by Mrs. Musgrave—that was on the third of October, 1925—he was informed by Mrs. Musgrave that her husband was sick and at the hospital at Hays. Mr. Benson left the policy of life insurance with Mrs. Musgrave, delivered it to her.

"The testimony will show that on the twenty-ninth day of October, along in the evening after supper, George Musgrave was taken sick again. He became violently ill, so ill that it was deemed advisable that he should be again sent to the hospital on the thirtieth day of October, 1925. He remained in the hospital from the thirtieth day of October, 1925, until the fourth or sixth—well, he died about the fourth day of November at the hospital at Hays."

Instruction No. 9 was given as to facts conceded by both parties, and the record shows such concession was made at the time it was given by the court. A portion of it is as follows:

"It is conceded by both parties . . . that Benson on October 3, 1925, delivered the policy to the plaintiff, Ollie Musgrave; that at the time of the delivery her husband, George Musgrave, the insured, was ill in a hospital at Hays."

The answers to the several questions submitted to the jury, other than those set aside, are as follows:

"1. Was George Musgrave in good health on September 9, 1925? A. Yes.

"6. To whom and when was the policy of insurance delivered by Benson? A. To plaintiff, Ollie Musgrave, October 3, 1925.

"7. What payment, if any, of the first year's premium was made for the

policy on the life of George Musgrave, and when and by whom and to whom? A. Payment $66.30 made October 3, 1925, by plaintiff, Ollie Musgrave, to . . . C. H. Benson.

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"9. What oral agreement, if any, was made between George Musgrave and Benson on or about September 9, 1925, as to paying the first year's premium? A. Benson orally agreed to make loan to Musgrave to meet payment of first year's premium.

"10. When did George Musgrave go to the hospital, and during what time did he remain there? A. Entered hospital September 27 or 28, 1925. Discharged October 27, 1925. Re-entered October 30, 1925. Remained until November 4, 1925.

"11. When did George Musgrave first become ill? A. During night preceding first entry to hospital September 27 or 28, 1925.

"12. When did Benson receive the policy from the defendant society? A. September 19, 1925.

"13. When did Benson seek to deliver the policy to George Musgrave? A. Four or five days after receiving policy from insurance society.

.  .   .   .   .   .   .   .   .   .   .   .   .   .   .

"16. What was the illness that caused the death of George Musgrave? A. Encephalitis. .

"17. Did the agent, C. H. Benson, agree with George Musgrave to grant to Musgrave an extension of time until July, 1926, to pay the first premium to Benson, and Benson agree to pay the first premium to the defendant? A. No.

"18. Was George Musgrave in good health when he signed the application for insurance? A. Yes.

"19. Was George Musgrave in good health at the time the defendant accepted his application and issued the insurance policy? A. Yes.

"20. Was George Musgrave in good health at the time the insurance policy was received by Benson for delivery to George Musgrave? A. Yes.

"21. Was George Musgrave in good health at the time when Benson first attempted to make delivery of the policy? A. Yes."

By the express terms of the application signed by the insured the policy "shall not take effect until the first premium has been paid during my good health." The jury has said the premium was paid October 3, 1925. Was that during the good health of the insured? In the answers set aside by the court the jury said he was in good health on October 3, 1925. In the face of the opening statement of counsel and the admission in instruction No. 9, to say nothing of the hospital record, the doctor's certificate, and the testimony of the plaintiff and others on the question of health, it is easily understood why the trial court set those answers aside. Let us get the dates in a bird's-eye view: Application for insurance made September 9, 1925; policy dated September 15, 1925; received

by agent September 19, 1925; agent attempted to deliver it four or five days later; insured taken sick September 27 or 28, 1925; went to hospital at Hays, September 28, 1925; policy handed by agent to plaintiff October 3, 1925; insured remained at hospital until October 27, 1925; at home from October 27 to October 30, 1925; arrived at hospital October 30, 1925; died November 4, 1925. There is no contention of fraud in applying for this policy. The company claims protection against misconduct in delivering it against specific instructions that it must not be delivered unless the insured is in good health at the time of delivery.

"The effect of a clause that a life insurance policy shall not take effect unless the applicant is in good health at the time of its delivery is to protect the company against a new element of risk through a change in the applicant's condition arising after the company's investigation had been made." (*Priest v. Life Insurance Co.*, 116 Kan. 421, syl. ¶ 5, 227 Pac. 538.)

Benson, the agent, testified he knew when he delivered the policy to the wife that the insured was sick and in the hospital. His duty under his instructions and the provision of the application, known to him and the insured, was to refuse to deliver the policy. This is the point in the transaction where the irregularity begins. Unless the insured was in good health at the time the policy was delivered all parties could not help but know it was improper and illegal to deliver or receive it.

"Where false answers concerning his health were knowingly made by an applicant for life insurance, the fact that the agent through whom the application was made, but who was not authorized to decide whether the policy should be issued, knew of their falsity does not prevent the company from successfully resisting payment on the ground of such fraud." (*Priest v. Life Insurance Co.*, supra, syl. ¶ 4.)

Appellant insists that after the delivery the company has waived its rights and is estopped to raise the question of ill health, but the soundness of that contention was not recognized in the case above quoted. If the plaintiff expects to bind the defendant by estoppel or waiver she must clearly and unequivocally show an intent on the part of the defendant to relinquish a right.

"To constitute a waiver of a contract right, there must be a clear, unequivocal and decisive act of the party showing an intention to relinquish the right, or acts amounting to an estoppel on his part." (*Cure v. Insurance Co.*, 109 Kan. 259, syl. ¶ 2, 198 Pac. 940.)

The case of *Green v. Insurance Co.*, 106 Kan. 90, 186 Pac. 970, is almost identical with the present one, except the agent did not ac-

tually hand over the policy to the wife, but told her it was all right in every way and she could depend upon it. It was held that the conditions precedent to the taking effect of the policy were not waived. The very next clause in the application in this case to the one requiring good health and payment of premium as conditions precedent to the taking effect of the policy provides that agents are not authorized to waive *anything*. There could not in this case have been a clear and unequivocal intention of the company in the attempted delivery of the policy by the agent to relinquish any rights of the company in violation of the very terms of the application.

Appellant complains of the court rendering judgment for defendant on the answers to the special questions notwithstanding the general verdict, and says that if the verdict could not stand a new trial should be granted, for possibly the plaintiff might be able to add something to her testimony. The practice of rendering judgment on the special answers notwithstanding the general verdict is not at all unusual.

"Rule followed that special findings of the jury, when inconsistent with the general verdict, control the latter, and judgment should be entered accordingly." (*Tacha v. Railway Co.*, 97 Kan. 571, syl. ¶ 1, 155 Pac. 922.)

"Special findings of a jury control their verdict and, although one of the findings is set aside for lack of support in the evidence, the court may render judgment on the remaining special findings notwithstanding the verdict, where the discarded finding does not conflict with or impair the force of the other findings which of themselves settle the substantial issues in the case." (*Hurt v. Stout,* 105 Kan. 54, syl. ¶ 1, 181 Pac. 623.)

The court was fully within its powers and did not deprive the appellant of any legal rights in rendering judgment for defendant on the answers to the special questions.

The judgment is affirmed.