228

SHERRELL D. and VIOLET M. WYATT

*Plaintiffs and Respondents*

vs.

STATE FARM FIRE AND CASUALTY COMPANY

*Defendant and Appellant*

and

LEO E. ROONEY, Agent for State Farm Fire and
Casualty Company and LEO E. ROONEY, individu-
ally,

*Defendants.*

(No. 2803; March 4th, 1958; 322 Pac. (2d) 137)

For the defendant and appellant the cause was submitted upon the brief and also oral argument of Houston G. Williams of Casper, Wyoming.

For the plaintiffs and respondents the cause was submitted upon the brief and also oral argument of Frank L. Bowron of Casper, Wyoming.

Heard before Blume, C. J. and Harnsberger and Parker, JJ.

## OPINION

Mr. Chief Justice BLUME delivered the opinion of the court.

This is an action brought by Sherrell D. Wyatt and Violet M. Wyatt against the State Farm Fire and Casualty Company and Leo E. Rooney as agent thereof to recover damages for the destruction of a garage covered by the fire insurance policy. The application for the insurance policy was to insure the house on Lot 7, Block 12, Mountain View Subdivision, Casper, Wyoming, in the amount of $10,000 and valued at $10,000. It also applied for insurance of $3,000 on the garage close to the house, valued as enlarged at $5,000. This application was signed only by Sherrell D. Wyatt. One of the questions was, "Does dwelling have mercantile

occupancy?" and there was inserted in pen the term "No". There was also contained in the application a section to be filled out if the property was to be used other than as a dwelling. This section was not filled out. The policy itself provided for insurance of $10,-000 on a one-story, approved roof, frame, one-family dwelling situated at Lot 7, Block 12, Mountain View Subdivision to Casper, Wyoming, and insurance of $3,-000 on a one-story, approved roof, garage while situated on the above described premises. There was a mortgage on the property in favor of the Guaranty Federal Savings and Loan Association of Casper, Wyoming, and that was duly noted in the application. The premium on the policy was $49.92 which was paid to and retained by the company. A memorandum only of the policy was delivered to the plaintiffs herein, the original and complete policy having been delivered to the mortgagee of the premises.

In the petition herein the plaintiffs, after alleging the ownership of the property, the fact that Leo E. Rooney was the agent for the State Farm Fire and Casualty Company, and the fact that the agent agreed to sell and the plaintiffs agreed to purchase the policy of insurance, stated in Sections 6 and 7 as follows:

"6. That on or about said date, contracts of insurance were entered into by said parties covering 1. The domestic dwelling of the plaintiffs located on the above described property, 2. A commercial garage owned by plaintiffs and located on the above described property and rented by the plaintiffs to Glendale Heating Company, for which said company the plaintiffs are local agents and managers * * *.

"7. That at said time and place, the defendant Rooney personally inspected the premises to be insured, including the aforesaid garage building, which at the time of his inspection was occupied by workmen of

Glendale Heating Company who were going about their usual tasks as employes of said company, and said defendant Rooney was told by plaintiffs that said building was used for commercial purposes and that said building was rented to the Glendale Heating Company by the plaintiffs, and said defendant Rooney at said time and place entered into the aforesaid agreement to insure said building against direct loss by fire, lightning and other damages and said Rooney accepted payment of the premium for said insurance on behalf of the Defendant State Farm."

The plaintiffs further alleged that the garage above mentioned was destroyed by fire on August 18, 1955, without fault on the part of the plaintiffs. The plaintiffs accordingly asked judgment for $3,000 and additional damages of $250 as loss of rental by reason of nonpayment of the insurance.

The substance of the answer of the defendant is as follows: That this defendant denies that such contract of insurance, which is the only contract of insurance between plaintiffs and defendant, covered a commercial garage owned by plaintiffs and located upon the real property described in plaintiffs' petition; that as will appear from Exhibit A, plaintiffs' dwelling house was covered by such insurance; and that the garage in question was covered by such contract of insurance only when not in use as a commercial structure. Defendant further alleged that an addition was made to the premises without notifying the defendant or its agents.

The garage in question here was a large garage and was insulated. At the time when the insurance herein was written, it contained heating apparatus, a thirty-six inch square shear with which to shear metal, a gas jet for heating metal, wiring, work benches and other tools and equipment used in a sheet metal shop.

Evidence on the part of the plaintiffs shows that Mr. Rooney, the agent, was informed that the garage was used for commercial purposes; that, it was rented to the Glendale Heating Company, of which the plaintiff Sherrell D. Wyatt was manager, for the sum of $75 per month; that plaintiffs, through the Glendale Heating Company, were operating a shop in the garage; and generally of the use to which the shop was put. Two workmen were employed by the Glendale Heating Company who fabricated certain structures in the shop to be used apparently mainly for heating purposes by other people on premises not in question here. The agent Rooney testified that he was informed that the equipment above mentioned was stored in the garage but was not in use. He stated that he visited the premises before the insurance was written for the purpose of verifying the facts as to the use of the premises, and that at least at one time he stood in the door of the garage and looked in and saw the tools that were in the shop. He also admitted that when he visited the premises he saw a pickup truck and a couple of workmen. He denied that he was informed that the Glendale Heating Company was renting the garage. The discrepancy in the testimony was of course to be resolved by the trial court. The agent Rooney admitted that the plaintiffs made an application on behalf of the Glendale Heating Company to insure the equipment and tools in the garage. The plaintiff Sherrell D. Wyatt also testified that when he first made application for insurance he told Rooney that he had to make an addition to the garage, namely by what he called moving a barracks building which was close and putting it endways to the building; and the testimony on behalf of the plaintiffs shows that the addition was in fact made at or prior to the time when the insurance policy here in question was issued. This was denied by Rooney. Furthermore, the policy itself states:

"Permission Granted: * * * (c) To make alterations, additions and repairs and to complete structures in course of construction * * *", so that matter does not seem to be of importance herein.

The court found for the plaintiffs generally and particularly as follows:

"That the allegations of plaintiffs' petition are true excepting the allegation for loss of rental; that defendant, through its agent, knew that sheet metal tools and supplies belonging to one of the plaintiffs doing business as the Glendale Heating Company was located in the garage building in question at the time the insurance in question was applied for, that the application for insurance was prepared by defendant's agent from information which he elicited from plaintiffs and is substantially correct as it pertains to the dwelling house which was the principal property covered by said policy of insurance; that if said application failed to set forth the detailed use and occupancy of the garage building it was due to the negligence of said agent, though he knew or should have known that plaintiffs were using said building as a sheet metal shop and warehouse, and the evidence herein fails to establish that such use and occupancy of said garage building materially increased the fire hazard over its normal use as a home garage and shop or as a warehouse for storage of sheet metal tools and supplies, which use and occupancy was admittedly known by defendant at the time said policy was issued."

Judgment accordingly was entered in favor of the plaintiffs and against the insurance company in the sum of $3,000 and costs. From that judgment the defendant insurance company has appealed. We might say before proceeding that the findings of facts by the court appear to be supported by substantial evidence, though we express no opinion on the point as to whether or not the hazard was increased by the use to which the garage was put.

The policy of insurance issued herein appears to be the standard policy provided for by § 52-406, W.C.S. 1945. It could not go into effect until countersigned by Rooney, the agent, who appears to be the general agent of the defendant in and for the State of Wyoming, or at least in and for the County of Natrona. Counsel for the defendant says that by reason of the equipment in the garage the hazard was increased contrary to the provisions of the policy. But of course if, as the court found, the agent knew the use to which the garage was to be put, it could hardly be said that the hazard was increased. It is claimed that the statement in the application that the property was not to be used for mercantile purposes bars the recovery of the plaintiffs herein. As stated before, it was signed only by one of the plaintiffs. He testified that he did not read the application; and in any event the statement would not be controlling, we think, in view of the knowledge of the use of the garage. Of course the insurance company could have insisted upon a definite limited use of the garage. 45 C.J.S. Insurance § 808, p. 861. If such a provision had been contained in the policy, then perhaps the authorities cited by counsel for the defendant herein to the effect that the insured was compelled to read the policy would apply, and that if he failed to do so, and the use of the garage was contrary to such specific provision, we would have a question before us different from that now before us. But the policy does not contain any specific limitation as to the use to which the garage could be put. Counsel for the defendant appears to contend that any use inconsistent with domestic use nullified the policy, contending that since the insurance was on a garage, limitation to such domestic use was implied. A garage, generally speaking, is a place for the care and storage of motor vehicles. The place may be public or private. See the definition of garage in 18 Words and Phrases, Perm. Ed.,

Garage, pp. 112-115. However, we hardly think, particularly in view of the knowledge of the agent in this case, that the term must necessarily be thus limited. It has been held that a filling station and a gasoline service station may be classified as a garage within the meaning of a statute governing a zoning ordinance. Wilinski v. Haddon Tp., 9 N.J. Misc. 140, 153 A. 97; Northern New Jersey Oil Co. v. Board of Adjustment of City of Newark, 6 N.J.Misc. 698, 142 A. 557. We have no doubt that many garages in this country are used at least partially for dwelling purposes and that a general workshop is contained in other garages. A filling station would be a workshop to the same extent as the sheet metal shop in the case at bar. Hence, it would seem that the controlling question herein is as to the effect of the knowledge which the defendant had as to the use to which the garage was put.

In 45 C.J.S. Insurance §692, pp. 644-647, it is stated:

"The knowledge of an officer or agent of the company, which is acquired within the scope of his duties of employment as to facts material to the insurance, is imputed to the company. This is true even though he does not in fact communicate his knowledge to the company or gives it erroneous information; but the rule does not apply where there is collusion between insured and the agent * * *.

"Applying these rules it has been held that a policy of insurance cannot be avoided for mis-representations or breach of warranty or condition as to health, habits, occupation, or other matters material to the risk, knowledge of which was acquired by authorized officers or agents of insurer in the performance of their duties relative to the acceptance of the risk and issuance of the policy, unless insured conspired with the agent to defraud insurer * * *."

In 45 C.J.S. Insurance § 693, pp. 651-654, it is stated:

"In accordance with, and subject to, the general rules stated supra § 692, if an officer or agent of insurer, during the course of his employment prior to or contemporaneously with the completion of the contract, acquires any information affecting the risk or becomes cognizant of any breach of a condition precedent or of false or conflicting statements by insured, his knowledge is imputable to insurer. This is true even though he does not in fact communicate his knowledge to insurer or gives it erroneous information; but the rule does not apply where there is collusion between insured and the agent.

"The rule is applicable where the agent is a general one and also, it has been held, where he is one possessing only limited powers, such as a soliciting agent, at least where the duties of such agent are not only to solicit insurance, but to make out the application and write down the answers of insured * * *."

In 29 Am.Jur. Insurance § 807, pp. 611-612, it is said:

"* * * It is usually held that where the insurer, at the time of the issuance of a policy of insurance, has knowledge of existing facts which, if insisted on, would invalidate the contract from its very inception, such knowledge constitutes a waiver of conditions in the contract inconsistent with the known facts, and the insurer is estopped thereafter from asserting the breach of such conditions. The law is charitable enough to assume, in the absence of any showing to the contrary, that an insurance company intends to execute a valid contract in return for the premium received; and when the policy contains a condition which renders it voidable at its inception, and this result is known to the insurer, it will be presumed to have intended to waive the condition and to execute a binding contract, rather than to have deceived the insured into thinking he is insured when in fact he is not, and to have taken his money without consideration. The reasonable view is that warranties or representations in an application of insurance are for the benefit of the insurer, in order that it may determine whether it will accept the risk, and if, with knowledge that statements

made therein are untrue, it consummates the contract of insurance, it is deemed to have thereby waived the right to subsequently assert their falsity to avoid liability."

In 29 Am.Jur. Insurance § 808, the general statement is made that knowledge of the agent is knowledge of the insurance company.

In the case of Jackson v. United Benefit Life Ins. Co., 54 Wyo. 62, 86 P.2d 1089, 1092, we quoted 37 C.J. 536-537, reading as follows:

"* * * 'It is a general rule that, where insurer with knowledge of facts entitling it to avoid or forfeit a policy, accepts or enforces payment of a premium, or retains a premium which it has received, it recognizes the continuing existence of the policy, and is precluded from asserting a forfeiture. This rule applies to the acceptance or retention of premiums for an unreasonable time.'" See, also, 45 C.J.S. Insurance § 716.

Continuing, we stated as follows:

"The cases are unanimous, or at least substantially so, in upholding this rule, and we have no occasion now or disposition to question it. * * *"

See also People's Ins. Co. v. Spencer, 53 Pa. 353, 91 Am.Dec. 217; Springfield Fire & Marine Ins. Co. v. McLimans, 28 Neb. 846, 45 N.W. 171; Welch v. Fire Ass'n of Philadelphia, 120 Wis. 456, 98 N.W. 227; Bailey v. Liverpool & London & Globe Ins. Co., 166 Mo.App. 593, 149 S.W. 1169.

The agent, and through him the defendant, having knowledge of the use to which the garage was put, the defendant is now estopped from claiming that such use invalidated the policy, and the judgment herein is affirmed.

Affirmed.