Lloyd SOWERS d/b/a Laramie Feed and
Trucking Service, Appellant
(Plaintiff below),

v.

IOWA HOME MUTUAL CASUALTY IN-
SURANCE COMPANY, Appellee
(Defendant below).

No. 2959.

Supreme Court of Wyoming.

Feb. 21, 1961.

G. R. McConnell and Walter Scott, Lara-
mie, for appellant.

Pence & Millett, George J. Millett, Lara-
mie, for appellee.

Before BLUME, C. J., and PARKER
and HARNSBERGER, JJ.

Mr. Chief Justice BLUME delivered the
opinion of the court.

This is an action brought by Lloyd Sow-
ers against the Iowa Home Mutual Casual-
ty Insurance Company for damages sus-
tained to a tractor and trailer near Elko,
Nevada. The parties will be mentioned
herein as in the court below, by name, or
as appellant and appellee. The court ren-
dered judgment in favor of the defendant
and the plaintiff has appealed. Plaintiff·
pleaded in his first cause of action, aside
from the allegations relating to the dam-
ages sustained, that he was entitled to re-
cover under the policy here in question,
the nature of which will be mentioned
somewhat later. In the second cause of
action, in addition to the upset and dam-
age sustained by the plaintiff, he alleged
that on or before the 24th day of August
1957, plaintiff applied to the Laramie In-
vestment Company, the agent of the de-
fendant, for insurance against loss of dam-
age and comprehensive coverage by col-
lision and upset of his tractors, trailers
and units which he used in his business
of hauling for hire; that the defendant
by its agent agreed to become the insurer
to the plaintiff on said units and issue a
policy against loss without limiting the
area in which plaintiff would be hauling
property for other persons; that defend-
ant through its agent issued a policy limit-
ing the radius to 500 miles from Laramie;

that plaintiff immediately advised defendant through its agent that the policy issued was in error and not the type of insurance which defendant had agreed to deliver and which had been ordered by the plaintiff; that these facts were brought to the attention of the Laramie Investment Company and C. N. Bell, general agent for defendant at Cheyenne; that said agents agreed that the 500-mile-radius limit was included by error and that a new policy would be issued as ordered by plaintiff; that in the meantime it was agreed that plaintiff was to notify the Laramie Investment Company of trips to be taken and units to be covered by insurance that were not on the policy; that one Middleton, agent of defendant, agreed to provide Sowers with postcards which could be readily mailed to the Laramie Investment Company advising of said trips but that the agents never provided the cards, which fact was brought to the attention of the Laramie Investment Company; that defendant through its agents agreed that no question would be raised as to the out-of-radius trips and that the company would take no advantage of it; that defendant has neglected and refused to issue the proper insurance policy agreed to be issued; and that, relying upon the representations of the agents of the defendant, the plaintiff took a trip on or about September 3–6, 1957, and sustained the damages in an upset in the sum of $12,128.67, for which judgment was asked.

Defendant answered, admitting that the policy described in the petition of plaintiff was in force on September 5, 1957, that the tractor and trailer were involved in an accident near Elko, Nevada, on or about September 6, 1957, and that defendant was notified of the accident, but alleging that the policy provided that defendant would not be liable for any loss or claims resulting from an accident or damage while the vehicle was being used, driven, operated or maintained beyond a radius of 500 miles from Laramie, Wyoming, and that the accident alleged in the complaint of plaintiff occurred more than 500 miles from Laramie.

During the course of the trial the plaintiff moved the court to add paragraph 15, as follows, to his second cause of action:

"That the Defendant by words and actions waived any conditions of said policy relative to 500 mile radius and reporting thereof by misleading and lulling the Plaintiff into the belief that he was fully covered by insurance for out of radius trips; that said out of radius trips are not in violation of the policy; and that there was no necessity of reporting the same until cards were furnished the Plaintiff by the Defendant for such purpose; that by such misleading words and actions the Defendant should be estopped to deny liability on the said policy."

The insurance policy here in question is numbered HCA 252–212. It had, among other provisions, the following:

"[not in small type] 22. *Changes:* Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this policy or estop the company from asserting any right under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy."

The policy further provided:

"(Commercial Automobiles)

"In consideration of the premium at which this policy is issued, it is agreed that the Company shall not be liable for any losses or claims whatsoever that result from any accident or damage caused by or involving any commercial automobile covered under this policy while such automobile is being used, driven, operated or maintained beyond the radius as stated herein. Radius of operation shall be measured from the limits of the city or town of principal garaging to the limits of the

city or town farthest removed to which the Insured operates. Within a 500 mile radius of Laramie, Wyoming.".

The policy was issued pursuant to a special application signed by the Laramie Investment Company and directed to the defendant company. This application contained the radius limit of 500 miles heretofore mentioned and also stated:

"I also agree that this insurance shall not take effect until approved at the Home Office of the Company."

The application is dated August 24, 1957, the date which the policy in question bears.

The testimony herein is substantially to the following effect: The C. N. Bell Agency of Cheyenne was the general agency for Wyoming for the insurance company. E. G. Jackson, doing business under the name of Laramie Investment Company, was the local agent of the Bell company. Richard Rejda was the local manager. Robert Middleton was an employee of the Bell agency who occasionally made trips over the state for the Bell agency arranging for insurance. Lloyd Sowers, doing business under the name of Laramie Feed and Trucking Company, formerly carried his insurance, or most of it, with the Tri-State company. Jackson lost his right to do business for that company and made arrangements for the defendant insurance company to take over the business formerly done with the Tri-State company, including the insurance for Sowers. The latter apparently had his trucks insured with the Tri-State company, protecting him when he was driving within the radius of 500 miles from Laramie with a provision for trips outside of that radius for which special rates were paid. The Tri-State special provision is not shown in the record. No such provision is in the policy here. The Bell agency had no authority to write insurance for a radius of more than 300 miles and was required to obtain special authority from the home office for a larger radius. The Jackson agency, according to the testimony of Jackson, had no authority to write insurance for trucks except pursuant to authorization and permission from the Bell agency. A policy referred to by the parties as a liability policy was issued to Sowers on May 1, 1957. It had the limitation of a 500 mile radius. The insurance policy in question here was issued on August 24, 1957, limiting the radius of driving to 500 miles. The plaintiff, through a driver, made a trip from Omaha to the west coast starting September 3, 1957. His tractor and trailer were wrecked on the morning of September 6, 1957, about 40 miles west of Elko, Nevada, more than 500 miles from Laramie. The defendant insurance company refused to pay the damages and the plaintiff sued to recover the amount heretofore mentioned.

Sowers, the plaintiff, testified that at various times when he became uneasy as to whether the out-of-radius trips were covered by insurance he called Rejda and the latter assured him that he was fully covered until he received postal cards. He testified that the first talk that he had with reference to the postal cards was on March 11 or 12, 1957. The same thing was told him on July 13 when he was making a trip to Los Angeles. Another time was on August 10 or 13 when Rejda assured him that until he got the cards he was covered. Another time Rejda told him that "an occasional trip" would take care of one, two or three trips. On September 2 he had a conversation with Rejda concerning which he testified as follows:

"That I was going to send that [load] to San Francisco, and that I needed coverage, and at that time I was informed that I didn't have to call. Until I got them cards I was covered, and not to worry, but I told him to be sure that I was covered. I told them I was going out there and that my broker in Frisco would call him back probably to be sure I had insurance because I would bring a load of produce back."

Plaintiff further testified that he made two hog trips and they were occasional, although he did not know what regular trips meant, and that he did his business with

Jackson's office and depended on them. He further testified that he continued to haul hogs for a period of about two months until sometime in November 1957 when he got sick. In August 1957 he purchased two diesel tractors with sleepers and two trailers called "hog palaces" which are used for hauling hogs long distances and are designed so that they can be cleaned and produce hauled back on the return trip. He was setting up hauls from Omaha to the west coast besides hauling his own local hauls commencing sometime in July 1957. He knew that if he made long hauls he would need a different kind of coverage from what he had.

C. N. Bell testified that he knew nothing about Sowers making any out-of-radius trips and that if he had known it the policy of Sowers would have been canceled. Jackson testified that he knew Sowers was accustomed to haul in Wyoming, Colorado, Nebraska and possibly Kansas. He knew that Sowers was hauling to the stockyards in Omaha. However, he stated he knew nothing about Sowers making trips to the west coast. According to the testimony of Rejda, he and Middleton sometime in April 1957 discussed that the defendant insurance company should take over the policies theretofore carried by the Tri-State company. He, Rejda, knew that the business of Sowers occasionally took him over the 500-mile radius and he so informed Middleton. He and Middleton discussed the matter of notification by postal cards of such out-of-radius trips. When he again talked with Middleton about the matter, Middleton said that he had forgotten it but would attend to it at once. Later Middleton stated to Rejda that he could not furnish the postal cards but that it might be possible that an indorsement be made on the policy, but such indorsement was never made. Rejda further testified that he recalled only one conversation with Sowers concerning out-of-radius trips. That was after May 1, 1957. He stated as follows:

"When he called me and reported out of radius trips I said to Bud [the plaintiff]: 'They are going to provide you with post cards. Until they do, I don't know what the Hell I am supposed to do, and I don't know what the Hell you are supposed to do. They know you are going out of radius, and I know, so I assume you have coverage.'"

The witness further testified that Sowers did not tell him that the latter was taking trips to the west coast or that he was making regular trips to the coast and he did not recall that Sowers told him that he was making a trip to Washington.

■■■ There is no evidence in the record to sustain the allegation that Sowers was promised a policy free from the 500-mile radius of travel or that the insurance company through its agents acknowledged that the policy issued was in error and that it would be corrected, but Sowers claims that the insurance company through its agents knew that the plaintiff occasionally traveled outside of that radius and that it waived the provision of the policy in that respect and is estopped from relying upon it. The burden of proof in that respect was on the plaintiff. 46 C.J.S. Insurance § 1648 (1946). And though a policy is construed ordinarily in favor of the insured (44 C.J.S. Insurance § 275b(2) (1945)), the proof by waiver and estoppel must be clear. Thus in Musgrave v. Equitable Life Assur. Soc. of United States, 124 Kan. 804, 262 P. 571, 573, the court said:

"* * * If the plaintiff expects to bind the defendant by estoppel or waiver, she must clearly and unequivocally show an intent on the part of the defendant to relinquish a right.

"'To constitute a waiver of a contract right, there must be a clear, unequivocal, and decisive act of the party showing an intention to relinquish the right or acts amounting to an estoppel on his part.' Cure v. [Midland Life] Insurance Co., 109 Kan. 259, syl. par. 2, 198 P. 940."

Counsel for appellant have cited us to numerous cases sustaining their contention.

We have examined each of the cases and many others in addition thereto. These cited cases are not very helpful herein unless it be the California case hereinafter mentioned. We discussed the question of waiver to some extent in Wyatt v. State Farm Fire and Casualty Co., 78 Wyo. 228, 322 P.2d 137, but the facts in that case were quite different from the facts in the case at bar. Counsel say that Tom Fennell, adjuster for the insurance company, acknowledged liability of the company but that was denied by Fennell and we must accept the finding of the court in that connection, which, judging from the judgment herein, was against the contention of counsel for Sowers. There also seems to be the contention that Sowers was assured by Rejda that he had coverage for his long hauls to the west coast, on one of which hauls the damages claimed herein were sustained, but we cannot say that is true if we accept the testimony of Rejda heretofore set out. He merely *assumed* that Sowers had coverage but he did not know what he or Sowers was to do, and his testimony shows that he knew nothing about any trips of Sowers to the west coast. The testimony of Rejda, moreover, indicates the limited authority for waiver and estoppel which the Jackson agency had and further seemingly shows that Sowers was aware of it. Much is made in the testimony and in the brief about so-called postal cards which the insurance company through Middleton was to furnish. Middleton was a soliciting agent with limited authority. See Chambers v. Home Mut. Ins. Ass'n, 214 Iowa 1353, 242 N.W. 30; 45 C.J.S. Insurance § 683 (1946). It is true that § 26-66, W.S.1957, makes him an agent of the company but the statute does not define his power and it is held under such a statute that such agent has no power to waive any condition of an insurance policy. 45 C.J.S. Insurance § 683, p. 632 (1946). In fact, we have been unable to see the importance of these postal cards. The claim seems to be that until these cards were furnished Sowers had coverage for long hauls beyond the 500-mile radius. Sowers testified that he first had a talk with Rejda about these cards on March 11, 1957. The cards did not appear but even six months later, namely on September 2, 1957, he claims that he was protected by reason of not getting these cards. Sowers knew that long hauls were more expensive. He never paid any additional premium for the long hauls which he made and he was not billed for any. He claims that Rejda told him that the insurance company would send him the bills, but it would seem that when he did not receive any bills for many months he should have been aware that something was wrong. Furthermore, we can hardly overlook the fact that the policy in question herein, issued August 24, 1957, was issued pursuant to a special application which limited the radius of travel to 500 miles without any exception whatsoever. The application was signed by Jackson, but we can hardly assume that it was made without plaintiff's knowledge though, of course, it is possible that Jackson withheld the truth from him.

■ Counsel for plaintiff cite us to and rely upon the case of Chase v. National Indemnity Company, 129 Cal.App.2d 853, 278 P.2d 68, 71. In that case the policy provided that: "'the regular or frequent use of the commercial type vehicle(s) described in such policy is and will be confined to the territory within fifty miles of Oxnard, California.'" The evidence showed that trips beyond the prohibited territory were numerous. The policy was issued by a general agent of the company and he did not consider the trips to be violative of the policy. The court held that he on behalf of the insurance company waived the prohibition in the policy. The policy in the case at bar was more specific. It specifically excluded any risks or damage outside of the 500-mile radius. It provided as follows:

"* * * it is agreed that the Company shall not be liable for any losses or claims whatsoever that result from any accident or damage caused by or involving any commercial

automobile covered under this policy while such automobile is being used, driven, operated or maintained beyond the radius as stated herein [500 miles]. * * *"

Numerous cases hold that such a provision cannot be waived by the agents of an insurance company and that the doctrine of estoppel cannot be applied. Thus it is stated in 29A Am.Jur. Insurance § 1014 (1960):

"Although the doctrines of waiver and estoppel extend to practically every ground on which an insurer may deny liability, there are certain important limitations upon the extent of the applicability of the doctrines of waiver and estoppel as against an insurer. As far as the doctrines of waiver and estoppel are based upon the conduct or action of the insurer, they are not available, as a rule, to bring within the coverage of a policy risks not covered by its terms or risks expressly excluded therefrom. * *"

See also § 1135 of the same work and 44 C.J.S. Insurance § 275a(1), p. 1092, note 66 (1945). 16 Appleman, Insurance Law and Practice, pp. 629, 630 (1944), states:

"It has been broadly stated that the doctrines of waiver and estoppel cannot be used to extend the coverage of an insurance policy or create a primary liability, but may only affect rights reserved therein. * * * under no conditions can the coverage or restrictions on coverage be extended by waiver or estoppel. * * *

"While a forefeiture of benefits contracted for in an insurance policy may be waived, the doctrine of waiver or estoppel cannot create a liability for benefits not contracted for. Nor may a contract, under the guise of waiver, be reformed to create a liability for a condition specifically excluded by the specific terms of the policy. * * *

"The doctrine of implied waiver or estoppel is not available to bring within the coverage of an insurance policy risks that are not covered by its terms or that are expressly excluded therefrom * * *."

In Wyatt v. State Farm Fire and Casualty Co., supra, this court stated that the insurance company could, of course, insist upon a definite limited use but in that case no such limited use had been mentioned. An annotation on the subject now discussed is contained in 113 A.L.R. 857, citing cases from twenty different jurisdictions, in which the annotator states at p. 858:

"It is well settled that conditions going to the coverage or scope of the policy, as distinguished from those furnishing a ground for forfeiture, may not be waived by implication from conduct or action, without an express agreement to that effect supported by a new consideration. This rule may be, as it often is, otherwise stated that the doctrine of waiver may not be applied to bring within the coverage of the policy risks not covered by its terms, or risks expressly excluded therefrom. (It will be noted, as above indicated, that the courts have also generally held, where the question has been considered, as appears from the statement of the individual cases, that the doctrine of estoppel could not be relied on to extend the coverage of the policy. * * * )"

In Miller v. American Eagle Fire Ins. Co., 226 App.Div. 772, 234 N.Y.S. 844, affirmed 253 N.Y. 64, 170 N.E. 495, 496, the court, considering the foregoing rule, stated:

" * * * The insurance company may be strictly held to its policy; its contract may even be liberally construed in favor of the policyholder, but the losses which it has specifically excluded cannot be brought within the insurance by a ruling of the courts. The contract which the parties have made limits the power of the courts. The law can declare a liability based upon the contract, but it has no power to made a contract. * * *"

In the case of Carew, Shaw & Bernasconi, Inc., v. General Casualty Co. of America, 189 Wash. 329, 65 P.2d 689, in which the

court laid down the same rule, it was held that in such a case the only remedy is an action for the reformation of the contract if the facts warrant it. Applying the foregoing rule, it is clear that plaintiff had no cause of action.

Furthermore, assuming that Sowers had coverage for occasional trips outside of the 500-mile radius, the question remains as to whether or not the trip during which his vehicles were damaged was an occasional trip. We have set out the evidence in that connection. It appears that as early as July 1957 Sowers made preparations to make hog trips to the west coast and bought vehicles adapted to that purpose. The trip during which his vehicles were damaged was the third trip which he made to the west coast and he continued these trips to about November 1, 1957, when he got sick. We stated in Hench v. Robinson, 75 Wyo. 1, 291 P.2d 417, 420, as follows:

"* * * Even conceding that the theory of defendant is plausible, the court by its judgment found against it, and it is a rule of law that when the case is tried to the court without a jury, then if different conclusions can be rationally drawn from the evidence, the case is one for the trial courts' determination. Bowden v. Wooden, 125 Cal.App. 115, 13 P.2d 811; 5 C.J.S., Appeal and Error, § 1656, p. 682 et seq.; 4 C.J. 879, notes 85 and 86."

We think it is clear beyond controversy that the trial court under the evidence herein had the right to find, as it doubtless did, that the trip during which plaintiff's vehicles were damaged was not an occasional but a regular trip. The judgment of the trial court herein must, accordingly, be and is affirmed.

Affirmed.