**CENTRAL CASUALTY COMPANY, an Illinois corporation, Plaintiff,**

v.

**NEUMAN TRANSIT CO., Inc., a Wyoming corporation, Defendant.**

**Civ. No. 4468.**

United States District Court
D. Wyoming.

March 29, 1962.

———◆———

Lathrop, Lathrop & Tilker, Cheyenne, Wyo., for plaintiff.

J. Reuel Armstrong and K. W. Keldsen, Rawlins, Wyo., for defendant.

KERR, District Judge.

In this case the court is called upon to construe the terms and conditions of liability insurance policies issued by plaintiff to defendant and to adjudge the method of computing the amount of the unpaid premium claimed to be due the insurer. Plaintiff seeks to recover the sum of $41,555.80, which it alleges is the

premium due for the policies which were issued effective June 23, 1959, and cancelled as of April 1, 1960.

The requisite diversity of citizenship of the parties and the jurisdictional amount prescribed by Title 28 U.S.C. § 1332, as amended, are satisfied. Plaintiff is a corporation duly organized in the state of Illinois, where it maintains its principal place of business. Defendant corporation was duly organized in the state of Wyoming and has its principal place of business in Wyoming.

Plaintiff contends that defendant entered into these insurance contracts through its trusted insurance agent, that a representative of plaintiff explained the terms of the policies to defendant and to its insurance agent, and that the defendant should pay the premium due according to the method of computation imposed by the terms of the policies and the endorsements thereto.

It is the contention of defendant that the provisions of the policies are ambiguous with respect to the computation of premium due and that there are contradictions and inconsistencies among the terms of the policies. Defendant argues that this court should resolve the alleged doubts and uncertainties as to the meaning of the policies by adopting an interpretation thereof favorable to the insured.

■ Courts may not permit a party to strain the construction of the contract to establish an ambiguity merely to invoke the rule of resolution against the drafter. East and West Ins. Co. of New Haven, Conn., v. Fidel, 10 Cir., 1931, 49 F.2d 35. According to the evidence defendant did not entertain any doubts or uncertainties relative to the provisions of the policies when they were issued. It is apparent from the record that defendant needed the particular coverage supplied by the policies; it wanted the financial arrangement and protection provided by the policies; and it paid the monthly premiums without complaint. When, however, it discovered what the earned premium charges were as determined by the formula, it immediately cancelled the policies. I cannot agree that ambiguity clouds the meaning of the terms of the policies.

No evidence controverts the accuracy of the amount of the net losses or claims paid by plaintiff on defendant's account, nor of the reserves held by plaintiff, nor of the expenses incurred by plaintiff incidental to the handling of the losses. Defendant objects only to plaintiff's method of computing the premium due. The controversy emanates from the disputed meaning of the terms "Incurred Losses", "Premium" and "Premium Paid". The parties also disagree on whether the figure $17\frac{1}{2}\%$ should be substituted for the figure $27\frac{1}{2}\%$ written in the contract as the basis on which to determine the amount due for management expenses.

To resolve this matter one need concentrate principally on the basic or underlying policy identified as No. CGA 50303 which embraces also the premium for the cargo policy No. SHB 1380. Any controversy with respect to this latter policy, therefore, is merged with the former.

Policy No. CAG 1426 is the automobile bodily injury and property damage liability policy providing for liability up to $995,000.00, and issued to supplement Policy No. 50303 in order to comply with the coverage requirements of the I.C.C. There is no Earned Premium formula in Policy No. 1426. By its terms all coverage over the $5,000.00 provided in Policy No. 50303 is paid for by the insured at a flat premium rate of $2.68 per $100.00 of gross receipts. In essence, therefore, the controversy between the parties is limited to the language in Policy No. 50303.

The definitions applicable to Policy No. 50303 are set out in Section I of Endorsement #1. The Formula For Determining Earned Premium Charges appears in Section II of the same Endorsement. Dovetailing these two sections, the method of computing the earned premium or charges due from defendant to plaintiff reads as follows:

"The Earned Premium Charges shall be composed of the sum of the following:

"1. Incurred losses [that is, net losses paid by the Company plus reserves as established by the Company on unpaid and unreported losses], subject to a limit of $5,000.00 each occurrence under this policy and Storebrand Insurance Company, Ltd., Policy # SHB 1380, and all loss expenses [that is, all expenses incidental to the handling of losses reported to the Company plus reserves for adjustment expenses on unpaid and unreported losses], plus

"2. 27½% of the Premium Paid [that is, the amount of premium developed and payable by the Insured on the policies enumerated in this Agreement or added to this Agreement by addendum], for management expense and company surplus, plus

"3. Taxes and Fees [that is, all taxes and fees applicable to policies enumerated in this Agreement or added by addendum]."

It is the position of plaintiff that the total premium charge made for these policies includes the sum derived by taking 27½% of the total premium payable by the insured. Defendant, on the other hand, urges that the word "premium" in paragraph 2 above is the premium provided in Endorsement No. 2 of policy No. 50303, which reads as follows:

"(3) On or before the 10th day of each calendar month while this policy is in force the named insured shall render to the Company a statement showing the gross revenue, whether or not collected, derived from the use of all automobiles owned, hired or used by the named insured during the preceding calendar month. The premium for each such calendar month shall be computed on said statement at a rate of $1.75 per $100.00 of gross revenue, the premium to be payable to the Company forthwith. The named insured shall maintain a record of all automobiles owned, hired or used by him at each location during the policy period, also a record of the gross revenue from the use thereof whether or not collected."

Defendant's position is untenable. This "premium for each calendar month" is obviously a sort of installment payment of the total amount of premium developed and payable by the insured. Another method of payment is by the "Deposit Premium", or "Advance Deposit Premium", which, under the conditions of the policy is an estimated premium only. These payments contribute to, but do not solely constitute the total premium payable by the insured. In other words, the insured defendant pays its premium in three steps: by the advance deposit, by the monthly payment, and finally by the payment of the earned premium charges as determined by the formula. Of necessity the 27½% must be applied to the total premium payable because it must bear a logical relationship to the expense of managing the entire insurance program.

The policy is explicit. It says "27½% of the Premium Paid". It does not say "27½% of the premium paid in each calendar month". The term "Premium Paid" is defined as "the amount of premium developed and payable by the Insured on the policies * * *" The definition contains no reference to the payments made in each calendar month based on the gross receipts. Rather, it implies a totality of charges which include the net losses paid by the company, the reserves set up by the company, and the expenses incurred by the company due to the losses. The advance deposit and the monthly premium payments are applied to or credited against the earned premium. According to the express conditions of the contract, if the insured has paid more premium than it earned, it will receive a refund. If, as in the case before me, the insured's losses and expenses have earned for it a greater premium than it has paid, then it must make up the deficit and pay the excess to the plaintiff.

Defendant next contends that the figure "27½%" as written in the formula for determining the earned premium charges should read "17½%". Admittedly, the president of the defendant Company had not read the policy. Testifying for the Company he stated that the policy was sold to him by his insurance agent, in whom he had faith and confidence and from whom he had bought his insurance for years. He accepted the policy, made his advance deposit and monthly payments, and he received benefits under it. He cannot now expect the court to reform his contract on the ground that he did not realize that he had agreed to pay 27½% instead of 17½% for management expenses, nor because the company was, in his opinion, making a nice profit at his expense.

Defendant did not refute plaintiff's explanation of the 10% differential. Plaintiff's witnesses testified that the 27½% is, in effect, the fee for managing the insurance program, 15% of which is for the approximate operating expense, and 2½% is for anticipated profit. Ten percent of that fee is normally retained by the broker. In the instant case, according to the undisputed testimony, the broker waived his ten percent in favor of the plaintiff to induce it to issue this insurance program to defendant.

Courts do not have the power to make new contracts at the instance of one of the parties. Sowers, d/b/a Laramie Feed and Trucking Service, v. Iowa Home Mutual Casualty Insurance Company (Wyo.1961), 359 P.2d 488.

This sound doctrine precludes this court, also from amending the terms of the insurance contract No. 50303 to delete therefrom the reserves established by the insurer on unpaid and unreported losses. As pointed out earlier in this memorandum, the term "Incurred Losses" explicitly includes the reserves established by the company on unpaid and unreported losses. The computation of the premium due plaintiff by defendant, therefore must properly include the reserves. This court is powerless to substitute its definition of the terms used in the contract for that agreed upon by the parties.

Applying the figures adduced at the trial to the Formula prescribed in Section II of Endorsement #1 of Policy No. 50303, the premium due plaintiff as of October 31, 1961, is to be computed as follows:

|  | #50303 | #1380 | TOTAL |
|---|---|---|---|
| Net losses paid by insurer ..... | $26,519.09 | $1,549.40 | $28,068.49 |
| Reserves established on unpaid and unreported losses ....... | 6,196.44 |  | 6,196.44 |
| Loss expenses ............... | 3,344.23 | 102.42 | 3,446.65 |
| Total Incurred Losses and Loss Expenses ................. | $36,059.76 | $1,651.82 | $37,711.58 |
| Plus 27½% of the Premium developed and Payable ........... |  |  | 10,370.68 |
| Subtotal: Premium developed and payable and management expense fee ....... |  |  | $48,082.26 |
| Plus 2½% State Tax on Premium developed and payable ....... |  |  | 1,202.06 |
| Subtotal: Premium developed and payable, Management expense fee and Tax ....... |  |  | $49,284.32 |
| Less Credit of Monthly Payments ....... |  |  | 7,728.48 |
| Total of Earned Premium Charges ....... |  |  | $41,555.84. |

Plaintiff has waived the four cent difference between the total amount due as computed above and the $41,555.80 claimed in its complaint.

Just prior to the trial a settlement of one of the claims was effected as a result of which plaintiff will receive $3,-000.00. Consequently, according to the undisputed evidence, this settlement will release the sum of $923.84 heretofore held by plaintiff as a reserve, and it will reduce the earned premium due plaintiff from defendant in the amount of $1,207.33. The total Earned Premium due and payable by defendant to plaintiff, therefore, is $40,348.47.

The evidence shows that possibly the defendant may ultimately receive another refund. Currently, the deposit premium of $4,228.00 paid on Policy No. 50303, and the deposit premium of $604.45 paid on Policy No. 1426 are being retained by plaintiff pending settlement or closing of all claims under the policies. According to the terms of Condition No. 1 in Policy No. 50303 the total of the two deposit premiums, $4,832.45, will be returned to defendant in the event plaintiff is not required to pay any more claims or incur any more expenses under the policies.

It is the conclusion of this Court that defendant's defenses are not substantiated by the evidence, and that plaintiff sustained its burden of proof that defendant is indebted to plaintiff in the sum of $40,348.47 as the unpaid balance due for the earned premium on the insurance policies here in dispute. Plaintiff is entitled to interest to be assessed and determined in accordance with Section 13–479 W.S.1957, and each party will pay its own costs.

This opinion sufficiently states the findings of fact and conclusions of law of the Court. Further findings of fact and conclusions of law are not necessary. Plaintiff will submit appropriate judgment within ten (10) days.